[645 NYS2d 654]

SHARON SYTNER et al., Respondents, v STATE OF NEW YORK, Appellant. (Claim No. 80718.)

Third Department, July 25, 1996

APPEARANCES OF COUNSEL

*Dennis C. Vacco, Attorney-General,* Albany *(Michael S. Buskus* and *Peter H. Schiff* of counsel), for appellant.

*Cappiello, Hofmann & Katz, P. C.,* New York City *(Edward M. Katz* of counsel), for respondents.

**OPINION OF THE COURT**

CREW III, J.

On February 18, 1990, claimant Sharon Sytner (hereinafter claimant) was injured while skiing at Belleayre Mountain Ski Center (hereinafter Belleayre) in Ulster County, which is owned and operated by the State. On the day in question and prior to opening Belleayre to the public, John Hubbell, a member of the Belleayre ski patrol, inspected the novice trails, including Mohican Trail, upon which claimant was injured, looking for bare spots, ice patches, tree limbs or anything else that would pose a danger to skiers. Any hazardous conditions encountered upon such inspection would be marked off with traffic cones, bamboo poles and orange tape wrap. Following Hubbell's inspection, he reported the condition of the trails to the summit dispatcher, who thereafter posted the conditions on Mohican Trail as rototilled and loose granular with icy patches. In addition to such posting, the State had placed orange cones at the top of Mohican Trail, together with a "snow-making in progress" sign.

Claimant, described as a solid beginner skier, her neighbor, Benjamin Heinrich, and his son were skiing together on the day in question. Prior to skiing claimant acquainted herself with the skiing conditions on the novice slopes, whereafter claimant, Heinrich and his son skied down Huron Trail, a novice trail, where the conditions were good and there were no ice patches. The three returned to the top of Huron Trail and commenced another run. About halfway down, they crossed over to Mohican Trail, a novice trail that ran parallel to Huron Trail. The crossover was created by a break in the tree line, which permitted skiers to transfer from one trail to another. At the

time of crossing over, and unbeknown to claimant, snowmaking was in progress on the right side of Mohican Trail below the crossover, limiting skiing to the left one third of the trail. However, there was no signage at the crossover advising skiers that snowmaking was in progress.

Heinrich, an expert skier, was the first to cross over from Huron Trail to Mohican Trail, and he started down the left side of the trail. Within 200 feet he came upon a solid icy area, approximately 25 feet to 35 feet wide and 40 feet to 50 feet in length, in which he observed a large bare spot with a light dusting of snow covering it. Heinrich was able, with some difficulty, to avoid the bare spot and come to a stop, whereupon he waved his poles at claimant and his son in an attempt to warn them of the hazard. Claimant, not understanding Heinrich's gestures, skied onto the ice, on which she had no control, and then onto the bare spot, where her skies stopped abruptly, and she was precipitated into the air and fell to the ground sustaining serious injuries. Hubbell found claimant lying on the icy area, which he described as a dangerous area for a beginner slope and one that should be marked with traffic cones and bamboo poles so as to cut the area off for skiing.*

At trial, Hubbell's immediate supervisor testified that although not every ice patch is a hazard, ski patrollers are required to mark off areas that they consider dangerous to novice skiers. The record further reflects that following the accident, a member of the ski patrol, in response to Heinrich's question as to why the trail was open, said "someone messed up", and a first aid attendant remarked that he thought Mohican Trail had been closed.

Following a bifurcated trial on the issue of liability, the Court of Claims found that the accident occurred by reason of the coalescence of two factors: the snowmaking, which compelled claimant to ski on the left one third of the trail, and the large icy area with the bare spot, which made skiing on the left side of the trail dangerous to those novice skiers who would be expected to use the trail. The Court of Claims further found that skiers crossing over from Huron Trail to Mohican Trail had no warning of either the snowmaking or the dangerous condition on the left side of the trail due to the State's failure to mark that area off in accordance with its own procedures. Accordingly, the Court of Claims found the State negligent and

---

* Hubbell testified that he had done this at the time of his morning inspection, but the Court of Claims rejected that testimony as not credible.

concluded that its negligence was the sole proximate cause of claimant's injuries. This appeal by the State ensued.

Initially, the State claims that the enactment of General Obligations Law article 18 (the Safety in Skiing Code) effectively abolished the common-law standards applicable to skiing accidents and, as such, where a ski operator complies with the requirements of the statute and the regulations promulgated pursuant thereto, it has satisfied its duty to skiers as a matter of law. The State further contends that inasmuch as it had fully complied with General Obligations Law §§ 18-103 and 18-106, it cannot be held liable to claimant. We disagree.

A review of the legislative history of General Obligations Law article 18 demonstrates that it was not meant to abolish the application of the common-law duty to warn of dangerous conditions. The statute "protects the existing rights of skiers and ski area operators by providing that each party's prerogatives to litigate in the event of injury will be governed by common law on a case by case basis. * * * [T]he bill does not shift, diminish or in any way change the rights of plaintiffs to sue ski area operators for negligence" (Supporting Mem, Bill Jacket, L 1988, ch 711). In a letter to the Governor in support of the statute, the State Superintendent of Insurance observed that "the legislation, while codifying the specific duties of each party involved in skiing activities, would appear to leave to the courts the ultimate responsibility of developing the common law in connection with skiing activities, to determine whether or not risks are reasonably foreseeable under particular circumstances and, therefore, assumed or not in individual cases" (Bill Jacket, L 1988, ch 711). Indeed, the statute specifically provides that "[u]nless otherwise specifically provided in this article, the duties of skiers, passengers, and ski operators shall be governed by common law" (General Obligations Law § 18-107). In other words, where a particular hazardous condition is specifically addressed by the statute, the statute controls; otherwise, the common law still applies.

Turning to the merits, we reject the State's contention that it was in full compliance with the requirements of General Obligations Law article 18. The statute, as pertinent here, requires that a ski operator "conspicuously post and maintain * * * ski area signage, *including* appropriate signage at the top of affected ski slopes and trails", regarding certain maintenance activities specified by the Commissioner of Labor (General Obligations Law § 18-103 [10] [emphasis supplied]), includ-

ing snowmaking (see, 12 NYCRR 54.6). Contrary to the State's assertion, the mandatory language of the statute is inclusive, not exclusive. Thus, while snowmaking signs must appear at the top of an affected slope, a ski operator is not necessarily relieved of the duty to warn more extensively. Clearly, the statute and regulations contemplate that the safety of skiers dictates that they be made aware of snowmaking activities before electing to ski on the affected slope. It therefore follows that where a ski resort has groomed crossovers permitting patrons to transfer from one slope to another, any signage required to be posted at the top of the affected slope should also be in place at such crossovers. Thus, the Court of Claims' implicit finding of negligence in this regard was fully warranted.

Nor are we persuaded that claimant may be said to have assumed the risk of skiing under such conditions. It is well settled that skiers are deemed to have consented to the inherent risks that are known, apparent or reasonably foreseeable (see, Dicruttalo v Blaise Enters., 211 AD2d 858, 859). The experience and skill of the skier, however, are relevant factors in determining the risks assumed (see, Roberts v Ski Roundtop, 212 AD2d 768). Finally, " 'assumption of risk is not an absolute defense but a measure of the defendant's duty of care' " (Giordano v Shanty Hollow Corp., 209 AD2d 760, lv denied 85 NY2d 802, quoting Turcotte v Fell, 68 NY2d 432, 439).

While it is true that bare and icy spots, in general, are a risk inherent in skiing (see, General Obligations Law § 18-106; 12 NYCRR 54.5 [l] [1]), we are of the view that neither the statute nor the accompanying regulations specifically contemplate or address the particular hazard that confronted claimant here. As noted previously, the icy "patch" was approximately 25 feet to 35 feet wide and between 40 feet and 50 feet long and contained a bare spot. Additionally, there was evidence that this area, located on a novice trail, indeed constituted a hazardous condition for novice skiers. Further, due to snowmaking, skiing was limited to the left side of the trail, thereby "funneling" claimant directly onto the hazard in question. Under such circumstances, it cannot be said that the State satisfied its common-law duty to make the conditions as safe as they appeared to be for a beginner such as claimant (see, Giordano v Shanty Hollow Corp., supra), and the Court of Claims quite properly determined that claimant did not assume the particular risk that confronted her on Mohican Trail.

Finally, even assuming the statute indeed governs this hazard, the record reveals that the State did not discharge its duty

thereunder. The statute and regulations require that the State post the general surface conditions of each slope, which includes noting the presence of any icy patches or bare spots (*see*, General Obligations Law § 18-103 [5] [e]; 12 NYCRR 54.5 [e] [5]; [f] [1]). Although the posting for Mohican Trail listed the surface conditions as loose granular with icy patches, no mention was made of any bare spots and, as such, it cannot be said that the State fulfilled its statutory duty in this regard. The State's remaining contentions have been examined and found to be lacking in merit.

CARDONA, P. J., MIKOLL, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the judgment is affirmed, with costs.