■ Mary L. Morgan et al., Respondents, v Ski Roundtop, Inc., et al., Defendants, and Ski Windham Operating Corporation et al., Defendants and Third-Party Plaintiffs-Respondents-Appellants. Vincent Caputo, as Parent and Guardian of Angelo Caputo, an Infant, Third-Party Defendant-Appellant. [736 NYS2d 135] —Mugglin, J. Appeal from an order of the Supreme Court (Connor, J.), entered October 20, 2000 in Greene County, which denied third-party defendant's motion for summary judgment dismissing the third-party complaint and denied certain defendants' cross motion for summary judgment dismissing the complaint against them.

---

On December 30, 1995, plaintiff Mary Lou Morgan (hereinafter plaintiff) was skiing at a resort owned and operated by defendants Ski Windham Operating Corporation and Snowtime, Inc. (hereinafter collectively referred to as defendants). At approximately 11:00 A.M., she boarded the chairlift leading to the top of the novice slope. This lift is three seats wide. Plaintiff was seated in the left seat. Her 10-year-old nephew occupied the middle seat and another skier was seated in the right seat. At the top of the lift, the "unload" ramp consisted of two sections, a level 8-foot wide by 10-foot long section, followed by an incline 8-feet wide and approximately 15 to 18 feet in length leading to the ski trail. On the right side of the ramp is a fence and safety gate enclosing the bull wheel, and on the left is a handrail attached to a plywood wall approximately three feet high. The lift operator's room is behind the plywood wall. As she reached the top of the lift, plaintiff saw a skier from the row of chairs immediately in front of her fall on the inclined portion of the unload ramp. Plaintiff's nephew and the other skier skied to the right of the fallen skier. While attempting to ski left of the fallen skier, plaintiff's ski tips impacted the plywood wall and she fell, injuring her knee. Plaintiffs' major claim against defendants is that their lift operator was not properly trained and that he negligently failed to stop the lift so that plaintiff could remain seated while the fallen skier exited the unload ramp. Defendants' report of the incident contains information from plaintiff that, while leaving the chairlift, she became tangled with her nephew, who then cut her off, and she crashed into the wall. As a result, defendants commenced a third-party action against her nephew's father, as his parent and guardian, alleging that the nephew's negligent conduct contributed to the cause of the accident.

Following joinder of issue and depositions, third-party defendant moved for summary judgment dismissing the third-party complaint arguing, first, that he is insulated from liability by the emergency doctrine and, second, that in any event, there is no proof of his son's negligence. Defendants opposed this motion on the basis that questions of fact exist and cross-moved for summary judgment dismissing plaintiffs' complaint, arguing that the doctrine of assumption of risk in this sporting activity is such that it owed no duty of care to plaintiff. Finding issues of fact, Supreme Court denied the motion and the cross motion. Defendants and third-party defendant appeal.

First, we agree that Supreme Court properly denied third-party defendant's motion for summary judgment. With respect

to the emergency doctrine, issues of fact exist concerning whether the nephew was faced with a sudden and unexpected circumstance (*see, Rivera v New York City Tr. Auth.*, 77 NY2d 322, 327; *Davey v Ohler*, 188 AD2d 726, 727) and whether his response to the emergency, assuming it existed, was reasonable and prudent (*see, Davis v Pimm*, 228 AD2d 885, 887, *lv denied* 88 NY2d 815). As to the issue of the nephew's negligence, we need only note that in his deposition testimony, the nephew claimed that he made no contact with plaintiff while leaving the chairlift, a claim that is completely at odds with plaintiff's description of the incident contained in defendants' report, leading to a classic issue of fact and credibility.

We next address defendants' cross motion seeking dismissal of the complaint on the basis of assumption of risk. "As a general rule, a voluntary participant in an athletic activity is deemed to have consented to the risk of injuries that are 'known, apparent or reasonably foreseeable consequences of the participation' in such events" (*Kaufman v Hunter Mtn. Ski Bowl*, 240 AD2d 371, 372, *lv denied* 91 NY2d 805, quoting *Turcotte v Fell*, 68 NY2d 432, 439). "[P]articipants will not be deemed to have assumed the risks of reckless or intentional conduct * * * or concealed or unreasonably increased risks" (*Morgan v State of New York*, 90 NY2d 471, 485 [citation omitted]). It is beyond debate that there is inherent risk of injury to participants in downhill skiing (*see*, General Obligations Law § 18-101). Moreover, there is undoubtedly some risk of injury inherent in entering, riding and exiting from a chairlift at a ski resort. However, we hold that the latter is not of such magnitude as to eliminate all duty of care and thereby insulate the owner from claims of negligent supervision and training of the lift operator or negligent maintenance and operation of the lift itself since such negligence may unduly enhance the level of the risk assumed (*see, Morgan v State of New York, supra*, at 485; *Jenks v McGranaghan*, 32 AD2d 989, 989-990). An issue of fact exists concerning whether or not the operator on the day in question was properly trained. Moreover, defendants' lift superintendent testified that if a skier falls on the unload ramp, defendants' policy requires the chairlift operator to stop the lift unless, in the judgment of the operator, an exiting skier has a "clear path" to maneuver around the fallen individual. Whether the operator was negligent in exercising his discretion to not stop the lift under the circumstances of this case should be resolved by a jury.

Mercure, J.P., Crew III, Carpinello and Rose, JJ., concur. Ordered that the order is affirmed, without costs.