# SUPREME COURT OF THE STATE OF NEW YORK
## *Appellate Division, Fourth Judicial Department*

**1377**
**CA 13-00386**
PRESENT: SCUDDER, P.J., CENTRA, CARNI, SCONIERS, AND WHALEN, JJ.

---

CHRISTINA J. TONE AND STEVEN TONE,
PLAINTIFFS-APPELLANTS,

V                                                    MEMORANDUM AND ORDER

SONG MOUNTAIN SKI CENTER AND SOUTH SLOPE
DEVELOPMENT CORP. AND THEIR AGENTS, SERVANTS
AND EMPLOYEES, AND PETER HARRIS, INDIVIDUALLY
AND DOING BUSINESS AS SONG MOUNTAIN SKI
CENTER, AND INDIVIDUALLY AS A MEMBER, OFFICER,
SHAREHOLDER AND DIRECTOR OF SOUTH SLOPE
DEVELOPMENT CORP., AND SONG MOUNTAIN SKI CENTER,
DEFENDANTS-RESPONDENTS.

---

WILLIAMS & RUDDEROW, PLLC, SYRACUSE (MICHELLE E. RUDDEROW OF COUNSEL),
FOR PLAINTIFFS-APPELLANTS.

ROEMER WALLENS GOLD & MINEAUX LLP, ALBANY (MATTHEW J. KELLY OF
COUNSEL), FOR DEFENDANTS-RESPONDENTS.

---

Appeal from an order of the Supreme Court, Onondaga County (Donald A. Greenwood, J.), entered November 2, 2012 in a personal injury action. The order granted the motion of defendants for summary judgment dismissing the complaint.

It is hereby ORDERED that the order so appealed from is unanimously modified on the law by denying defendants' motion in part and reinstating the complaint insofar as it asserts claims for negligent operation of the chairlift and a derivative cause of action, and as modified the order is affirmed without costs.

Memorandum: Plaintiffs commenced this action seeking damages for injuries Christina J. Tone (plaintiff) sustained while using a triple chairlift at defendant Song Mountain Ski Center, which is owned and operated by defendant South Slope Development Corp. Defendants moved for summary judgment dismissing the complaint, contending that plaintiff assumed the risk of injury when she "willingly engaged in the recreational activity of downhill skiing." We agree with plaintiffs that Supreme Court erred in granting the motion with respect to the claim for negligent operation of the chairlift, and we therefore modify the order accordingly.

"As a general rule, a voluntary participant in an athletic activity is deemed to have consented to the risk of injuries that are

known, apparent or reasonably foreseeable consequences of the
participation in such events . . . [P]articipants will not be deemed
to have assumed the risks of reckless or intentional conduct . . . or
concealed or unreasonably increased risks . . . It is beyond debate
that there is inherent risk of injury to participants in downhill
skiing . . . Moreover, there is undoubtedly some risk of injury
inherent in entering, riding and exiting from a chairlift at a ski
resort.  However, . . . the latter is not of such magnitude as to
eliminate all duty of care and thereby insulate the owner from claims
of negligent supervision and training of the lift operator or
negligent maintenance and operation of the lift itself since such
negligence may unduly enhance the level of the risk assumed" (*Morgan v
Ski Roundtop*, 290 AD2d 618, 620 [internal quotation marks omitted];
*see* General Obligations Law § 18-101; *Miller v Holiday Val., Inc.*, 85
AD3d 1706, 1707; *see generally Morgan v State of New York*, 90 NY2d
471, 485).

Contrary to plaintiffs' contentions, defendants met their burden
on the motion of establishing as a matter of law that the triple
chairlift was designed and maintained properly and that it met all
industry standards.  Furthermore, defendants established as a matter
of law that they were not negligent in their supervision and training
of the chairlift operators.  Plaintiffs failed to raise a triable
issue of fact with respect to those claims (*see generally Zuckerman v
City of New York*, 49 NY2d 557, 562).

We conclude, however, that defendants' own submissions raised
triable issues of fact whether they were negligent in their operation
of the chairlift, thereby unduly enhancing the risk to plaintiff (*see
Miller*, 85 AD3d at 1708; *Morgan*, 290 AD2d at 620).  Defendants
submitted evidence that plaintiff, an experienced skier, was riding
the triple chairlift with her then-eight-year-old son and another
passenger.  Upon reaching the sign directing passengers to prepare to
unload, plaintiff noticed that her skis were entangled with her son's
skis.  Defendants did not slow or stop the chairlift, and plaintiff
was unable to unload from the chairlift before it passed the unloading
area.  Plaintiff was injured when she either jumped or was thrown from
the chairlift before it reached the safety gate that would have
stopped the chairlift.

Our decision in *Miller* is instructive.  In that case, the
plaintiff's skis were entangled with her son's snowboard.  Upon
approaching the unloading area, the plaintiff and her son "frantically
attempt[ed] to untangle [the] plaintiff's skis," and the plaintiff's
son "yelled to her that he was unable to do so" (*id.* at 1708).  We
concluded that such evidence, combined with an expert's opinion that
"the top lift attendant had sufficient time in which to observe
plaintiff's distress and . . . to slow or stop the lift," was enough
to raise "triable issues of fact whether the alleged failure to
operate the lift in a safe manner was a proximate cause of the
accident" (*id.*).

Although there is no evidence that the actions of plaintiff
herein signaled her distress to a chairlift operator upon approaching

the unloading area, defendants submitted evidence that top chairlift operators are required to monitor every approach to the unloading area to ensure that skiers are unloading safely. According to defendants' submissions, the top chairlift operators are able to see three to four approaching chairs at any given time, and are able to see to the tower where plaintiff first noticed that her skis were entangled. Once the emergency stop is activated, the chairlift is able to stop within 10 to 12 feet. Based on that evidence, we conclude that there is a triable issue of fact whether defendants were negligent in operating the chairlift.

Even if we were to assume that defendants met their initial burden on their motion with respect to the claim for negligent operation of the chairlift, we conclude that plaintiffs raised triable issues of fact by submitting defendants' training materials. Those materials state that the primary duty of a chairlift operator is to monitor the passengers as they prepare to unload and to anticipate problems. Where it "appears" that a passenger coming up the chairlift is experiencing a problem, the chairlift operators should try to stop or slow the chairlift to a very slow speed. Inasmuch as plaintiff began experiencing her problem some distance away from the unloading area, we conclude that there are issues of fact whether the top chairlift operator had sufficient time to observe plaintiff's problem, to anticipate the danger to plaintiff in attempting to unload from the chairlift with entangled skis and to slow or stop the chairlift in sufficient time to enable plaintiff to unload safely. Stated differently, there is a "rational view of the evidence that could lead a fact finder to conclude that the danger could or should have been prevented or lessened" by defendants, and thus defendants were not entitled to summary judgment dismissing the claim for negligent operation of the chairlift (*Covel v Mt. Mansfield Co.*, 237 AD2d 791, 792; *see Miller*, 85 AD3d at 1708; *Morgan*, 290 AD2d at 620).

Entered:  January 3, 2014                    Frances E. Cafarell
                                             Clerk of the Court