**Ewald PAULUS and Barbara Paulus, Individually and as husband and wife, Plaintiffs,**

v.

**HOLIMONT, INC., Defendant.**

**No. 1:12–CV–00055 EAW.**

United States District Court,
W.D. New York.

Signed April 24, 2015.

Benjamin J. Andrews, Richard A. Nicotra, Andrews, Bernstein Maranto & Nicotra, PLLC, Buffalo, NY, for Plaintiffs.

Steven M. Zweig, Cheroutes Zweig LLC, Hamburg, NY, for Defendant.

## DECISION AND ORDER

ELIZABETH A. WOLFORD, District Judge.

### *INTRODUCTION*

Plaintiff Ewald Paulus ("Plaintiff") injured himself in a ski accident at the Holimont Ski Area ("Holimont"), located in Ellicottville, New York, which is owned by Defendant Holimont, Inc. ("Defendant"). Pending before the Court is Defendant's motion filed pursuant to Fed.R.Civ.P. 56 seeking summary judgment. (Dkt. 23).

Many aspects of the case are not in dispute—the accident occurred on January 23, 2009; Plaintiff was a self-described "accomplished" skier who skied since the age of 5 on various terrain and in different conditions throughout the world; and the accident occurred on the lower portion of a trail at Holimont named "Corkscrew" that is rated "more difficult" with a blue square. Similarly, there does not appear to be any dispute that Plaintiff fell when he encountered more difficult terrain upon entering the Corkscrew trail from another trail. However, it is hotly contested whether the terrain that Plaintiff encountered was of the type that is inherent in downhill skiing, or rather whether the con-

ditions were unique and created a dangerous condition over and above the usual dangers that are inherent in the sport.

Because the Court cannot determine as a matter of law that the terrain on the Corkscrew trail was of the type inherent in the sport, and because that issue is material to Defendant's argument that Plaintiff is barred from recovery in this case by the doctrine of assumption of the risk, the Court denies Defendant's motion for summary judgment. The issues in this case, including Defendant's negligence and Plaintiff's assumption of the risk, will need to be resolved by a jury at trial.

### FACTUAL BACKGROUND

On January 23, 2009, Plaintiff traveled by bus from his home in Ohio to Holimont for "a day of skiing" with the Edelweiss Ski Club. (Dkt. 26–2 at 52; Dkt. 29–5 at ¶ 2). At that time, Plaintiff was 68 years old, and he had been skiing since the age of 5. (Dkt. 25 at ¶ 1; Dkt. 26–1 at 36; Dkt. 29–5 at ¶ 1). Plaintiff claims he had participated in various ski races throughout the years, and he had skied on different mountains throughout the world involving varying terrain, including ice and "moguls." (Dkt. 25 at ¶¶ 2–4; Dkt. 26–1 at 37–45; Dkt. 26–2 at 149 ¶ 8). "Moguls" are mounds of snow that come in different shapes and sizes. (Dkt. 25 at ¶ 12; Dkt. 29–1 at 1). Plaintiff used racing skis and boots, and he admitted that he liked to ski fast. (Dkt. 25 at ¶ 10; Dkt. 26–1 at 50–51, 56). Plaintiff estimates he was traveling twenty miles per hour at the time of the accident. (Dkt. 26–1 at 89).

Plaintiff claims that the date of the accident represented only his second trip to Holimont, having skied at the mountain on one prior occasion during the previous year's ski season. (Dkt. 26–1 at 49; Dkt. 29–5 at ¶ 2). Plaintiff denies having any knowledge of moguls existing on the Corkscrew trail based upon his prior trip to Holimont. (Dkt. 26–1 at 67–69; Dkt. 29–5 at ¶ 3).

Plaintiff's accident occurred on January 23, 2009, during his first run of the day. (Dkt. 26–1 at 49, 71). Plaintiff alleges that he rode to the top of the mountain that morning on the "Expo" chair lift, which runs directly over the Corkscrew trail where the accident occurred. (*Id.* at 66–67). However, Plaintiff denies seeing the difficult terrain on the Corkscrew trail when he was on the chair lift. (Dkt. 26–1 at 82–83; Dkt. 29–5 at ¶ 4).

After disembarking from the "Expo" chair lift, Plaintiff claims he skied to his right down another trail. (Dkt. 26–1 at 75–76). He was skiing with George Adam, who has ahead of Plaintiff, and Josef Krist, who skied behind him. (Dkt. 29–7 at 4–5). They cut over to the Corkscrew trail, in order to ski back to the base of the Expo chair lift. (Dkt. 26–1 at 76–77).

Plaintiff acknowledges that a blaze orange caution sign was placed directly at the top of the portion of the Corkscrew trail where Plaintiff was injured, but Plaintiff does not believe he observed this sign as he cut over to the Corkscrew trail from another trail. (Dkt. 25 at ¶ 7; Dkt. 26–1 at 80, 83; Dkt. 29–1 at 2). Plaintiff believes that he may have skied onto the Corkscrew trail below the caution sign. (Dkt. 26–1 at 95; Dkt. 29–5 at ¶ 2).

Mr. Adam, who was skiing ahead of Plaintiff, testified that he immediately started to fall upon entering the Corkscrew trail. (Dkt. 29–9 at 4). At his deposition, Mr. Adam described the terrain as follows: "Well, it looked—it looked like almost like a mogul, but it was sort of a deeper ditch. . . ." (*Id.* at 5). Mr. Adam continued: "they were like ditches going across the hill and not really shaped as a mogul." (*Id.* at 6). Mr. Adam further testified that the terrain on Corkscrew

"was not exactly moguls" but rather "real deep ditches." (Dkt. 26–2 at 37).

Plaintiff described the terrain on the Corkscrew trail at his deposition as follows:

Q And then once you made that right turn to come under the chair lift, what were the conditions like?

A What I can—I got into it, all of a sudden there was this—to me it sounded—it's like compressions (sic) I call 'em. It's all this—where all these waves coming in.

Q Did they look like moguls to you?

A Well, moguls don't look that big to me. Moguls just is something smaller, where you turn on a mogul. It's where you can ski around it. This look more like compression where it's in and out again.

(Dkt. 26–1 at 78). Plaintiff denied that the "compressions" were consistent in shape and size. (*Id.* at 79).

In an affidavit submitted in opposition to Defendant's summary judgment motion, Plaintiff stated that the Corkscrew trail contained "a series of deep depressions" unlike anything that Plaintiff had skied previously. (Dkt. 29–5 at ¶ 6).

Mr. Krist, who was behind both Plaintiff and Mr. Adam, testified that he "almost fell, too," but he was able to stop his progression. (Dkt. 29–7 at 10). Although describing the terrain on the Corkscrew trail as "moguls", Mr. Krist testified that the terrain was "unusual" and the moguls were particularly deep and closer together than a typical mogul field. (*Id.* at 10–12). Mr. Krist testified that he did observe the orange caution sign (*id.* at 6), and he acknowledged that the Corkscrew trail and its mogul field were observable from the Expo chair lift (*id.* at 7).

Other witnesses to the condition of the Corkscrew trail where Plaintiff fell described the terrain as not consisting of

moguls, but rather "depressions" (Dkt. 26–2 at 59 (Stefan Paulus, Plaintiff's son's testimony)); and looking "more like humps than moguls" and not being "normal moguls" but rather appearing "unnatural" (*Id.* at 106 (Robert Gutwein)).

Defendant contends that the terrain on the portion of Corkscrew where Plaintiff fell consisted of man-made moguls that were created by the resort at the request of members and guests (Dkt. 23–2; Dkt. 26–2 at 128–29). Defendant contends that the moguls were evenly spaced, and characterized the terrain as consisting of "baby bumps" "beginning bumps" and "learning bumps." (Dkt. 23–2; Dkt. 26–2 at 124–27).

As a result of Plaintiff's accident, he contends that he was seriously injured, including fracturing his vertebrae at C1 and C2 resulting in surgery and a 10–day stay at a hospital in Buffalo. (Dkt. 26–1 at 88; Dkt. 26–2 at 146–47).

### PROCEDURAL HISTORY

The complaint was filed on January 20, 2012, and Defendant answered the complaint on February 14, 2012. (Dkt. 1, 4). The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, as Plaintiffs and Defendant are citizens of different states and the amount in controversy exceeds $75,000. (Dkt. 1 at ¶¶ 1, 4, 5, 16, 20)

After the completion of discovery, on September 30, 2013, Defendant filed its motion for summary judgment. (Dkt. 23). Plaintiffs filed papers in opposition to the motion on October 31, 2013 (Dkt. 29), and Defendant filed its reply papers on November 18, 2013 (Dkt. 31, 32, 33).

The case was transferred to the undersigned on January 27, 2015. (Dkt. 35). The Court heard oral argument on March 12, 2015, and reserved decision. (Dkt. 36).

## DISCUSSION

### I. Legal Principles

#### A. Standard on a Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment should be granted if the moving party establishes "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The Court should grant summary judgment if, after considering the evidence in the light most favorable to the nonmoving party, the court finds that no rational jury could find in favor of that party. *Scott v. Harris,* 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586–87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)).

Once the moving party has met its burden, the opposing party " 'must do more than simply show that there is some metaphysical doubt as to the material facts.... [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial.*' " *Caldarola v. Calabrese,* 298 F.3d 156, 160 (2d Cir.2002) (quoting *Matsushita Elec.,* 475 U.S. at 586–87, 106 S.Ct. 1348) (emphasis in original). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment...." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (emphasis in original).

#### B. New York Negligence Standards

■ Of course, "[w]hen a federal court sits in diversity, it applies federal procedural law and the substantive law of the state in which the court sits." *Dataflow, Inc. v. Peerless Ins. Co.,* No. 3:11–CV–1127 (LEK/DEP), 2014 WL 4881534, at *2 n. 2, 2014 U.S. Dist. LEXIS 138042, at *5–6 n. 2 (N.D.N.Y. Sept. 30, 2014) (citing *Gasperini v. Ctr. for Humanities,* 518 U.S. 415, 427, 116 S.Ct. 2211, 135 L.Ed.2d 659 (1996)). To prevail on a negligence claim under New York law, a plaintiff must establish the following: (1) the defendant owed a duty of care to the plaintiff; (2) the defendant breached that duty; and (3) the plaintiff's injuries were proximately caused by the defendant's breach. *See Bluth v. Bias Yaakov Academy for Girls,* 123 A.D.3d 866, 866, 999 N.Y.S.2d 840 (2d Dep't 2014).

■ As relevant to this case, a plaintiff's assumption of the risk "define[s] the standard of care under which a defendant's duty is defined and circumscribed 'because assumption of risk in this form is really a *principle of no duty,* or no negligence and so *denies the existence of any underlying cause of action.*' " *Morgan v. State of New York,* 90 N.Y.2d 471, 485, 662 N.Y.S.2d 421, 685 N.E.2d 202 (1997) (emphasis in original). In other words, assumption of the risk is a principle that qualifies a defendant's duty of care.

■ As the New York Court of Appeals has explained: "Relieving an owner or operator of a sporting venue from liability for inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks." *Id.* at 484, 662 N.Y.S.2d 421, 685 N.E.2d 202. In assessing the extent of a duty of care in the context of assumption of the risk principles, "knowledge plays a role but inherency is the sine qua non." *Id.* In gauging inherency, one must consider "whether the conditions caused by the defendants' negligence are unique and created a dangerous condition over and above the usual dangers that are inherent in the sport." *Id.* at 485, 662 N.Y.S.2d 421, 685 N.E.2d 202 (quota-

tion omitted). A plaintiff "will not be deemed to have assumed the risks of ... concealed or unreasonably increased risks." *Id.* (citations omitted).

■ Moreover, in order for the principle to `apply, the risk must not only be inherent in the sporting event, but the plaintiff must have "knowledge of the injury-causing defect" and "appreciation of the resultant risk" which must be "assessed against the background of the skill and experience of the particular plaintiff." *Id.* at 486, 662 N.Y.S.2d 421, 685 N.E.2d 202 (citations and quotations omitted). In other words, a plaintiff who is familiar with the sport and the venue will be more likely to have assumed a risk as a matter of law than a novice who is participating in the sport for the first time.

### C. Assumption of the Risk for Downhill Skiers

■ The law is clear in New York that "[d]ownhill skiers 'assume the inherent risks of personal injury caused by, among other things, terrain, weather conditions, ice, trees and manmade objects that are incidental to the provision or maintenance of a ski facility.'" *Basilone v. Burch Hill Operations, Inc.,* 199 A.D.2d 779, 780, 605 N.Y.S.2d 423 (3d Dep't 1993) (quoting *Fabris v. Town of Thompson,* 192 A.D.2d 1045, 1046, 597 N.Y.S.2d 477 (3d Dep't 1993)).

■ A skier's assumption of the risk is statutorily recognized in New York's Safety in Skiing Code, which recognizes that downhill skiing "contains inherent risks ... which may be caused by variations in terrain or weather conditions; surface or subsurface snow, ice, bare spots or areas of thin cover, moguls, ruts, bumps...." N.Y. Gen. Oblig. Law § 18–101. In other words, variations in terrain, including moguls, are recognized risks that are inherent in the sport of downhill skiing. *See Sytner v. State of New York,* 223 A.D.2d 140, 143,

645 N.Y.S.2d 654 (3d Dep't 1996) (New York's General Obligations Law replaces the common law where it specifically addresses a condition).

■ On the other hand, "[t]he risks inherent in skiing are 'not of such magnitude as to eliminate all duty of care.'" *Clarke v. Peek 'N Peak Recreation Inc.,* 551 F.Supp.2d 159, 163 (W.D.N.Y.2008) (quoting *Morgan v. Ski Roundtop,* 290 A.D.2d 618, 620, 736 N.Y.S.2d 135 (3d Dep't 2002)). A property owner has a "duty to exercise care to make the conditions as safe as they appear to be." *Braun v. Davos Resort, Inc.,* 241 A.D.2d 533, 533, 661 N.Y.S.2d 643 (2d Dep't 1997) (quotation omitted). Therefore, if the risks are "fully comprehended or perfectly obvious," then the plaintiff has assumed the risk and the defendant has discharged its duty. *Id.* "The 'experience and skill of the skier ... are relevant factors in determining the risks assumed.'" *Sharrow v. New York State Olympic Reg'l Dev. Auth.,* 193 Misc.2d 20, 42, 746 N.Y.S.2d 531 (N.Y.Ct.Cl.2002) (citations omitted).

Thus, in evaluating the appropriateness of summary judgment in a downhill ski accident based upon assumption of the risk principles, courts consider whether, as a matter of law, the risk that caused the accident was inherent in downhill skiing, or rather whether the condition was unique and created a dangerous condition over and above the usual dangers inherent in skiing. Of course, General Obligations Law § 18–101 recognizes certain conditions that are, by definition, inherent risks, such as "moguls" and "bumps." Also relevant to the summary judgment analysis is the skier's knowledge of the risk, in part based upon the skier's familiarity with the conditions of the mountain and the skier's expertise and experience.

Applying these principles to cases concerning skiing ·injuries involving the ter-

rain of a ski course, courts have reached varying results depending upon the nature of the terrain and the skier's knowledge of the conditions. For example, in *Calabro v. Plattekill Mt. Ski Ctr., Inc.,* 197 A.D.2d 558, 602 N.Y.S.2d 655 (2d Dep't 1993), the plaintiff fell due to a "small dip or bump which spanned approximately 75% of the width of the trail." *Id.* at 558, 602 N.Y.S.2d 655. The plaintiff was an experienced skier who had encountered similar conditions at other ski trails, and had successfully skied the trail in question several times on the day of the accident without incident. The dip in the trail was clearly visible, and the trail was in good condition with no unusual or unanticipated features. Under the circumstances, the court concluded that the defendant was entitled to summary judgment because the risk encountered was inherent to downhill skiing and the plaintiff had or should have had knowledge of the risk.

Similarly, in *Ruepp v. West Experience, Inc.,* 272 A.D.2d 673, 706 N.Y.S.2d 787 (3d Dep't 2000), the plaintiff, who was skiing at night, encountered a "depression in the trail" causing him to flip and injure his shoulder. *Id.* at 673, 706 N.Y.S.2d 787. The plaintiff was an intermediate skier and had skied at the mountain in question at least 6–8 times during that season alone. The trail was well lit, but a shadow from the trees was cast in the area of the depression. Finding that the risk was inherent to downhill skiing, and the plaintiff knew or should have known of the risk, the court reversed the trial court and granted summary judgment in favor of the defendant.

Likewise, in *Sontag v. Holiday Valley, Inc.,* 38 A.D.3d 1350, 832 N.Y.S.2d 705 (4th Dep't 2007), the court determined that the plaintiff, an experienced skier who had skied at the resort more than 100 times over a 30–year period and was sufficiently aware of inherent risks of downhill skiing, including the risk of injury caused by moguls or bumps in the terrain regardless of whether they could be seen, was not entitled to proceed to trial on his case where he fell while swerving to avoid two skiers in a darkened area at the bottom of the ski trail, and hit two bumps and fell.

Other cases have granted summary judgment in favor of the defendant ski resort based upon a skier's assumption of the risk. *See Bennett v. Kissing Bridge Corp.,* 17 A.D.3d 990, 794 N.Y.S.2d 538 (4th Dep't 2005) (in split 3–2 decision, court reversed the trial court and granted summary judgment in favor of the defendant; plaintiff testified that he fell when he skied through "slush" and "hit a dry spot" in the middle of a trail, he then "slid on the ice" and fell, and "slid under a wooden fence to the bottom of a ravine where he hit a tree and fractured his right leg"; majority concluded that the defendant established that plaintiff's accident was caused by variations in terrain and ice, all of which are inherent risks in skiing, and the plaintiff failed to raise an issue of fact as to whether the defendant created a dangerous condition with the wooden fence that was "over and above the usual dangers inherent in the sport of downhill skiing"); *Painter v. Peek'n Peak Recreation, Inc.,* 2 A.D.3d 1289, 769 N.Y.S.2d 678 (4th Dep't 2003) (plaintiff assumed risk of "submerged ice divot" that was "like a curb" in ski trail, where plaintiff was experienced skier who had skied on slope in question "hundreds of times"); *Hyland v. State of New York,* 300 A.D.2d 794, 752 N.Y.S.2d 113 (3d Dep't 2002) (granting summary judgment in favor of defendant where plaintiff, an advanced intermediate skier familiar with the mountain, encountered a bare spot, causing him to lose control and hit a fence that was an open and obvious structure existing on the boundary of the ski trail, as opposed to within the ski trail); *Bono v. Hunter Mountain Ski Bowl, Inc.,*

269 A.D.2d 482, 703 N.Y.S.2d 246 (2d Dep't 2000) (affirming summary judgment in favor of defendant based upon plaintiff's assumption of the risk, where plaintiff, an experienced skier who had skied on trail in the past, skied down 15–foot wide portion of trail by right tree line, hit an ice patch, fell, and struck a tree, resulting in his death); *Braun v. Davos Resort, Inc.*, 241 A.D.2d 533, 661 N.Y.S.2d 643 (2d Dep't 1997) (affirming summary judgment in favor of defendant based upon plaintiff's assumption of the risk, where plaintiff, who had skied on and observed the trail at issue many times in the past, veered to avoid hitting two skiers, slid over an icy patch, and was forced into the woods upon hitting a steep drop-off, where he crashed and injured himself).

On the other hand, in *Sharrow v. New York State Olympic Reg'l Dev. Auth.*, the case went to trial and liability was apportioned 75% to the state and 25% to the claimant where the claimant, while skiing at Gore Mountain, "unexpectedly came upon a manmade 'tabletop' ski jump element which had recently been constructed and concerning which no notice or warning had been provided." 193 Misc.2d at 21, 746 N.Y.S.2d 531. The claimant had skied on the trail about one week earlier and the tabletop jump was not present; however, the claimant failed to notice a sign at the entrance to the trail advising of an upgraded level of difficulty. The court determined that that the claimant did not assume the particular risk that she encountered, but she contributed to the happening of the accident by failing to observe the sign at the entrance of the trail and use reasonable care to observe her surroundings.

Also, in *Younger v. Hunter Mountain Ski Bowl, Inc.*, No. 90–CV–654, 1994 WL 568527, at *1, 1994 U.S. Dist. LEXIS 14719, at *1 (N.D.N.Y. Oct. 5, 1994), the plaintiff was an expert skier who had regularly skied at the mountain in question, working as a ski instructor. There was a steep drop-off from the trail that plaintiff was skiing on, and the plaintiff claimed that she was "guided into the trees as a natural result of an 'unreasonably dangerous trail configuration.'" *Id.* at *1, 1994 U.S. Dist. LEXIS 14719 at *2. Under the circumstances, the court could not determine as a matter of law that the plaintiff assumed the risk at issue, and therefore denied the defendant's summary judgment motion. *See also, Rigano v. Coram Bus Serv., Inc.*, 226 A.D.2d 274, 641 N.Y.S.2d 285 (1st Dep't 1996) (summary judgment not warranted where case was replete with conflicting evidence and varying inferences, including whether defendants negligently permitted ski trail to become hazardous and created additional risks not generally associated with the sport of skiing); *Basilone*, 199 A.D.2d at 780, 605 N.Y.S.2d 423 (denying summary judgment in case where 15–year old plaintiff who was a first-time skier skied over a frozen puddle on the trail, lost control, and hit a post on an unpadded split-rail fence near a chair lift; even though plaintiff admitted that she had seen the fence during other runs that day, it was disputed whether the fence in question was along the access line to the chair lift and beyond the ski trail, or whether it was located on the ski trail).

## II. Genuine Issue of Fact as to Whether Plaintiff Assumed the Risk of Conditions on Corkscrew Trail

Against the framework of the law discussed above, the Court here must determine whether, as a matter of law, Plaintiff assumed the risk that he encountered on the Corkscrew trail on January 23, 2009. The resolution of that issue primarily depends upon whether the risk was inherent to downhill skiing, although Plaintiff's knowledge of the risk is also relevant to the Court's determination.

With respect to the inherency of the risk, there is plainly a dispute as to the nature of the condition that Plaintiff encountered. If, indeed, the Corkscrew trail simply contained "moguls" or "baby bumps" as some witnesses contend, then those conditions are quite plainly inherent risks to downhill skiing and Defendant would be entitled to summary judgment. On the other hand, if the conditions were *not* simply moguls, but rather "real deep ditches" or "a series of deep depressions" that "looked unnatural" and were unlike anything encountered previously on a ski mountain, notwithstanding Plaintiff's vast experience in skiing for decades on various terrain throughout the world, then it is more difficult to conclude as a matter of law that the conditions were inherent risks to downhill skiing. This is particularly the case where it appears to be Defendant's position that it actually intentionally created the conditions on the Corkscrew trail on the date in question.

Defendant has attached photographs of the alleged accident scene to its motion papers, in an effort to contend that the terrain simply consisted of typical moguls. (Dkt. 26–1 at 25, 27, 29, 31; Dkt. 26–2 at 156). With the exception of one of the photographs, which contains a deposition exhibit marker and can be authenticated through the deposition testimony (Dkt. 26–2 at 156), Defendant relies solely on its attorney's affidavit to authenticate the photographs (Dkt. 23–1 at ¶ 3). Normally this would not be sufficient to satisfy evidentiary standards applicable on a summary judgment motion. *See Raskin v. Wyatt Co.*, 125 F.3d 55, 56 (2d Cir.1997) ("The principles governing admissibility of evidence do not change on a motion for summary judgment.... Therefore, only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment."); *Cochrane v. McGinnis*, 50 Fed.Appx. 478, 480 (2d Cir. 2002) ("Photographs are authenticated by testimony of a person familiar with the object portrayed therein") (quotation omitted). However, Plaintiff does not appear to contest the authenticity or admissibility of the photographs, and in fact, appears to rely on some of the same photographs in opposing the summary judgment motion. (Dkt. 29–5 at ¶ 10). In any event, even in view of the photographs, the Court is not able to resolve as a matter of law the disputes concerning the nature of the terrain that Plaintiff encountered on the date of the accident. In other words, it is not clear to the Court that the conditions on the Corkscrew trail on the date in question were inherent to the nature of the risks involved with downhill skiing.

Moreover, while Plaintiff's expertise in skiing certainly supports the notion that he knew that terrain on a ski course may change and, therefore, he should be charged with knowledge that the condition on one ski trail may be different from another, this is not a case where Plaintiff had skied previously at Holimont on numerous occasions. Rather, Plaintiff contends (and Defendant has not presented any evidence suggesting otherwise) that he had only visited Holimont on one previous occasion, and during that trip he had not encountered the conditions present on Corkscrew on the date of the accident. Moreover, the accident occurred during Plaintiffs first run of the day. Defendant certainly has an argument that Plaintiff knew or should have known about the condition of Corkscrew, given the fact that his chair lift ride went over the trail and there were caution signs on the trail. Indeed, those facts may be particularly relevant to Plaintiff's alleged comparative negligence. *See Sharrow*, 193 Misc.2d at 21, 746 N.Y.S.2d 531 (claimant, who failed to notice warning sign, was 25% liable for injuries). However, given Plaintiff's denials that he observed the condition of the trail or the caution signs, coupled with the

questions of fact as to the nature of the condition of the ·trail, it cannot be determined as a matter of law that Plaintiff assumed the risk.

In sum, while the issue is a close one, and the result may be different if there was no factual dispute that the conditions on Corkscrew simply consisted of moguls, or if Plaintiff had frequented Defendant's ski trail more regularly in the past, under the circumstances of this case, the Court cannot conclude as a matter of law that Plaintiff assumed the risk so as to insulate Defendant from any liability. There are disputed issues of fact that a jury will need to determine at trial.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is denied.

SO ORDERED.