Dewan-Zemko v Hunter Mtn. Ski Bowl, Inc. (2023 NY Slip Op 03386)

Dewan-Zemko v Hunter Mtn. Ski Bowl, Inc.

2023 NY Slip Op 03386

Decided on June 22, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:June 22, 2023

535230
[*1]Tracy Dewan-Zemko et al., Respondents,
v
Hunter Mountain Ski Bowl, Inc., Appellant.

Calendar Date:April 25, 2023

Before:Garry, P.J., Egan Jr., Lynch, Fisher and McShan, JJ.

Roemer Wallens & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for appellant.
Michael Fakhoury, Esq. PC, Fishkill (Jeffrey E. Litman of Litman Law Firm, Woodbury, of counsel) for respondents.

Fisher, J.
Appeal from an order of the Supreme Court (Adam W. Silverman, J.), entered April 14, 2022 in Greene County, which, among other things, denied defendant's motion for summary judgment dismissing the complaint.
In January 2018, plaintiff Tracy Dewan-Zemko sustained personal injuries while snow tubing with her family at Hunter Mountain Ski Resort when she collided head-first into a haybale at the end of the tubing hill. Plaintiff and her spouse, derivatively, commenced this negligence action against defendant, the owner and operator of Hunter Mountain Ski Resort. Defendant answered and asserted several affirmative defenses, including that Dewan-Zemko had assumed the risk of injury when she engaged in the activity of snow tubing. Following the close of discovery, defendant moved for summary judgment, arguing that Dewan-Zemko assumed the risks associated with snow tubing and that she had failed to demonstrate an evidentiary basis for her alleged injuries. Supreme Court denied the motion, and defendant appeals.
We affirm. "Under the doctrine of primary assumption of the risk, a voluntary participant in a recreational activity, such as snow tubing, consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Thompson v Windham Mtn. Partners, LLC, 161 AD3d 1366, 1366 [3d Dept 2018] [internal quotation marks and citations omitted]; see Youmans v Maple Ski Ridge, Inc., 53 AD3d 957, 958 [3d Dept 2008]). "A participant is not, however, deemed to have assumed the risks that are concealed or unreasonably enhanced" (Grady v Chenango Val. Cent. Sch. Dist., ___ NY3d ___, ___, 2023 NY Slip Op 02142, *2 [2023] [internal quotation marks and citation omitted]; see Thompson v Windham Mtn. Partners, LLC, 161 AD3d at 1366; Connolly v Willard Mtn., Inc., 143 AD3d 1148, 1148 [3d Dept 2016]). In determining whether the doctrine applies, we assess the participant's knowledge and awareness of the risk "against the background of the skill and experience of the particular plaintiff" (Morgan v State of New York, 90 NY2d 471, 486 [1997] [internal quotation marks and citation omitted]; see Sara W. v Rocking Horse Ranch Corp., 169 AD3d 1342, 1343 [3d Dept 2019]). Generally, application of the doctrine of primary assumption of risk "presents a question of fact for a jury to resolve" (Hope v Holiday Mtn. Corp., 123 AD3d 1274, 1275 [3d Dept 2014]; see Thompson v Windham Mtn. Partners, LLC, 161 AD3d at 1366; Connolly v Willard Mtn., Inc., 143 AD3d at 1150).
Here, defendant submitted the deposition testimony from several employees who are familiar with the tubing hill and Dewan-Zemko's accident. Notably, a resort supervisor testified that there are 10 to 18 snow tubing lanes on the mountain with staff at the top and bottom of the hill. Snow tube riders descend a chosen lane and are slowed at the bottom of the hill by rubber mats. The degree to which riders are slowed depends on several factors[*2], notably the temperature, type of snow, the individual snow tube or the weight of a rider. The supervisor testified that, should riders go beyond the rubber mats, there is a barrier of haybales used as a safety precaution to slow riders down or stop them at the end of the course. She further explained that the haybales are wrapped in a thick plastic to prevent them from getting wet, "because if the haybales get wet then they become more solid and a harder surface when they freeze." The manager of the snow tubing park testified that, in the 10 years he had worked at defendant's facility, he had only seen one rider reach the haybales and that rider did not sustain any injuries. According to defendant's expert, although there is no industry standard that dictates what materials to use at the end of runout areas, defendant's use of wrapped haybales are a "typical design" within the snow tubing industry, which is a reasonable choice and efficient at reducing rider injuries.
In addition, defendant offered photographs, the accident report and testimony from Dewan-Zemko and her family, which demonstrated that the temperature was hovering around zero degrees before the accident on her second run. According to Dewan-Zemko, she had been snow tubing once previously and acknowledged purchasing the lift passes that directed her to review a warning statement. Such statement provided that snow tubing contained inherent risks, including personal injury, as the result of "collisions with objects" or "other natural objects or man-made objects that are incidental to the provision or maintenance of a tubing facility in New York State." Dewan-Zemko also testified that she observed a warning sign that instructed snow tubers to not wear loose clothing. With respect to the injury-producing run, she testified that "snow and stuff" had obscured her vision and she did not know how to stop before colliding head-first into the haybales. However, defendant's expert highlighted that the accident report provided that Dewan-Zemko admitted her hood fell over her face and she did not see the haybales before the collision, which he said was clear from the fact that she did not take any defensive action like rolling off the tube or bracing for impact before colliding with the haybales. Given this evidence, we find that defendant satisfied its moving burden of demonstrating that Dewan-Zemko assumed the inherent risk that her snow tube could collide with an object such as the haybales at the end of the run and that such risk was inherent in the activity (see Thompson v Windham Mtn. Partners, LLC, 161 AD3d at 1366; Connolly v Willard Mtn., Inc., 143 AD3d at 1149; Youmans v Maple Ski Ridge, Inc., 53 AD3d at 959).
Therefore, the burden "shifted to plaintiff[s] to demonstrate facts from which it could be concluded that defendant concealed or unreasonably enhanced the danger[,] or created conditions which were unique or above those inherent in the activity" (Thompson v Windham Mtn. Partners[*3], LLC, 161 AD3d at 1367 [internal quotation marks, ellipsis, brackets and citation omitted]). In raising a question of fact, plaintiffs offered a weather report indicating that the temperature was between -2 and -3 degrees on the day of the accident. Plaintiffs relied on Dewan-Zemko's testimony that the haybales were "frozen" and contended that the frozen haybales were a concealed danger that unreasonably increased the risks inherent to snow tubing. Plaintiffs highlighted that the resort supervisor acknowledged that the haybales could freeze and become hard if water leaked into them. Although the resort supervisor testified that she had not seen holes develop in the haybales, the manager of the snow tubing park testified that the haybales would develop holes and needed to be replaced once or twice mid-season to prevent moisture from accumulating inside. The record demonstrates that the haybales were checked in November 2017, but lacks any evidence as to when, or if, defendant's staff had inspected the haybales for holes or moisture infiltration prior to the accident. Nor does the record indicate the condition of the haybales at the time of the accident, other than Dewan-Zemko's contentions that the haybales were frozen and an employee's concession that hay was sticking out of the plastic wrap.[FN1] Photographic evidence demonstrated that snow and/or ice were both at the base of the haybales and on top of same, and also raised a question as to whether there were holes in the haybales, which would have allowed moisture infiltration. The foregoing proof, considered in a light most favorable to plaintiffs, raises a factual issue to be resolved by a jury as to whether the risk of injury was concealed or unreasonably increased by defendant (see Thompson v Windham Mtn. Partners, LLC, 161 AD3d at 1368; Connolly v Willard Mtn., Inc., 143 AD3d at 1150; see also Grady v Chenango Val. Cent. Sch. Dist., 2023 NY Slip Op 02142 at *4). Accordingly, Supreme Court properly denied this branch of defendant's motion for summary judgment.
Lastly, we reject defendant's arguments that plaintiffs have not provided evidence of Dewan-Zemko's cervical injuries or traumatic brain injuries. The expert report offered by defendant in support of this argument cites to some injuries that Dewan-Zemko sustained approximately three decades before the accident. Although the record contains references that Dewan-Zemko had sustained prior cervical injuries, the record fails to reveal any surgical recommendations prior to the snow tubing accident; the only recommendations came after the accident. Nor does the expert report accurately consider the happenings after the accident. Notably, Dewan-Zemko left the scene of the accident in a neck/back brace and collar. The accident report completed by defendant's ski patroller indicated that Dewan-Zemko was in "extreme pain" in her neck and had a "probable" fracture — which was confirmed in an X-ray days after the accident, revealing compression fractures [*4]at two points in Dewan-Zemko's spine. The record further reveals that Dewan-Zemko spent nearly two weeks in the hospital following the accident and underwent a cervical spine surgery in February 2018 — the following month after the accident. To the further extent that defendant challenges Dewan-Zemko's alleged traumatic brain injuries with certain medical assessments, these findings are controverted in the record and therefore create a question of fact (see Murgia v Smith, 190 AD3d 1233, 1237-1238 [3d Dept 2021]). Accordingly, Supreme Court properly denied this branch of defendant's motion for summary judgment. We have examined the parties' remaining contentions and have found them to be lacking merit or academic.
Garry, P.J., Egan Jr., Lynch and McShan, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Although defendant's expert inspected the haybales and found them to be in "good condition," this statement is wholly unpersuasive because his visit was nearly two months after the accident. He further failed to indicate if the weather conditions during his inspection in March of 2018 were similar to the below-freezing temperatures on the date of the accident on January 6, 2018.