A.G. v Vail Resorts Mgt. Co. (2024 NY Slip Op 02119)

A.G. v Vail Resorts Mgt. Co.

2024 NY Slip Op 02119

Decided on April 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:April 18, 2024

CV-23-1379
[*1]A.G., an Infant, by his Parent and Guardian, Dina Grafstein, Respondent,
v
Vail Resorts Management Company et al., Appellants.

Calendar Date:February 21, 2024

Before:Clark, J.P., Lynch, Reynolds Fitzgerald, Ceresia and Powers, JJ.

Roemer Wallens Gold & Mineaux LLP, Albany (Matthew J. Kelly of counsel), for appellants.
O'Connor & Partners, PLLC, Newburgh (Michael Kolb of counsel), for respondent.

Reynolds Fitzgerald, J.
Appeal from an order of the Supreme Court (Richard L. Mott, J.), entered July 18, 2023 in Greene County, which denied defendants' motion for summary judgment dismissing the complaint.
In January 2019, A.G., a 14-year-old self-described intermediate skier, was injured while skiing down the black diamond Hellgate trail [FN1] at Hunter Mountain Resort LLC, a facility located in Greene County, owned and operated by defendants. A.G. testified that he had intended to ski down the Belt Parkway trail — a blue trail — but upon arriving there it was roped off and closed. He then went to the other blue trail, White Cloud, but it too was closed. After some deliberation with his brother, with whom he was skiing, the two began to ski down Hellgate. While descending the trail, A.G. fell and was injured.
As a result, plaintiff — A.G.'s mother and guardian — commenced this action against defendants on A.G.'s behalf, alleging, among other things, that A.G.'s injuries were caused by defendants negligently diverting him onto a "most difficult" slope. Defendants answered and raised several affirmative defenses, including that the action was barred by the doctrine of primary assumption of risk. Following discovery, defendants moved for summary judgment dismissing the complaint on that ground. Plaintiff opposed the motion arguing, among other things, that questions of fact existed as to whether the Belt Parkway trail was closed. Supreme Court denied the motion, and defendants now appeal. We affirm.
"Under the assumption of risk doctrine, a ski area operator is relieved from liability for risks inherent in the sport of downhill skiing when the participant is aware of, appreciates and voluntarily assumes those risks. Whether a participant is aware of and appreciates a particular risk must be assessed against the background of the skill and experience of the participant" (Bodden v Holiday Mtn. Fun Park Inc., 200 AD3d 1432, 1433 [3d Dept 2021] [internal quotation marks, ellipsis and citations omitted]; see Bishop v State of New York, 219 AD3d 994, 995 [3d Dept 2023]). Moreover, a skier will not be deemed to have assumed the risks that are concealed or unreasonably enhanced (see Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 95 [2023]; Dewan-Zemko v Hunter Mtn. Ski Bowl, Inc., 217 AD3d 1215, 1216 [3d Dept 2023]). Finally, as a general rule, the "application of the doctrine generally presents a question of fact for a jury to resolve" (Hope v Holiday Mtn. Corp., 123 AD3d 1274, 1275 [3d Dept 2014]; see Thompson v Windham Mtn. Partners, LLC, 161 AD3d 1366, 1366 [3d Dept 2018]).
Defendants argue that A.G. assumed the risk of injury when he skied down Hellgate and that, as such, they are absolved from liability. In support of their motion for summary judgment, defendants submitted, among other things, the deposition testimony of A.G. and his brother. A.G. testified that he had previously taken one lesson and, although he had only skied four times before the day of his accident[*2], he considered himself an intermediate skier as he was able to maneuver green and blue trails falling "[i]nfrequently." He acknowledged being familiar with New York rules applicable to downhill skiing, including, among others, that he should ski only trails that are within his skill level. A.G. also recognized that skiing involves a risk of falling and injuring oneself, but that he wanted to ski despite this risk. On this, his first visit to Hunter Mountain, he was skiing with his then-19-year-old brother who was "between [an] intermediate and advanced" skier, and they had a current trail map of Hunter Mountain with them. That morning, after A.G. and his brother skied a few green trails, they decided to move on to an intermediate trail and chose to ski Belt Parkway. Both brothers testified that when they got off the lift, they skied to the head of Belt Parkway, but found it closed. As such, they skied to White Cloud, but found it closed as well.[FN2] Thus, A.G. and his brother were presented with the conundrum of how to get down the mountain. A.G. told his brother that it was his understanding that skiers were prohibited from riding the lifts back down the slope. They both testified that they did not double back to the Summit Lodge [FN3] to seek help, nor did they choose to remove their skis and trudge down the mountain. Instead, they consulted the trail map for the best option for the shortest access to an intermediate trail. They saw "that Hellgate was the shortest black that was open that day [that led] to any blue trails." At that point, A.G. said he felt like he had "no other option" but to attempt the trail, and so he did. Despite "trying to keep [himself] as slow as possible," he lost control, fell and sustained his injury as a result of the fall.
In addition to the foregoing, defendants also submitted: the general surface conditions reports for the day in question, which indicate that, at least as of 8:03 a.m. and 12:07 p.m., Belt Parkway was open; the deposition of a ski patroller on duty that day; and the affidavit of the director of the ski patrol at Hunter Mountain. However, neither of these two witnesses has an independent recollection of the day of the accident, and while they both aver that they have reviewed records which state that Belt Parkway was open and "available" to A.G., the records in question merely reflect that the trail was open as of the time of the reports, namely 8:03 a.m. and 12:07 p.m.[FN4] A.G.'s accident occurred at approximately 11:20 a.m., several hours after the purported morning inspection and almost an hour before the afternoon inspection.
Based on this record, defendants did not carry their initial burden of establishing the absence of a triable issue of fact with respect to the doctrine of primary assumption of risk and, as a result, Supreme Court correctly denied defendants' motion for summary judgment. While A.G. was admittedly aware of the general risks of skiing and his statutory duty to ski in control and within [*3]his skill level, and consequently may have assumed the risk of skiing in general, a factual dispute exists as to whether Belt Parkway was closed and, as such, whether the risk assumed by A.G. was unreasonably enhanced. Viewing the evidence in the light most favorable to plaintiff, we find that a question of fact exists with respect to A.G.'s assumption of risk.
Clark, J.P., Lynch, Ceresia and Powers, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Defendants' snow report trail map designated the trails with a green circle for beginner, a blue square for more difficult and a black diamond for most difficult.

Footnote 2: Defendants do not dispute that White Cloud, the only other non-black diamond trail shown on the trail map, was closed.

Footnote 3: Summit Lodge is a lodge located at the summit of Hunter Mountain.

Footnote 4: The record reflects that it was the practice of the ski patroller assigned to that area to ski the trail once in the morning and once in the afternoon and phone in the status of the trail immediately after completing the run.