■ Richard M. Hyland et al., Appellants-Respondents, v State of New York, Respondent-Appellant. (Claim No. 95790.) [752 NYS2d 113] —Carpinello, J. Cross appeals from an order of the Court of Claims (Bell, J.), entered August 17, 2001, which partially granted defendant's motion for summary judgment and denied claimant's cross motion for partial summary judgment on the issue of liability.

This claim arises from a tragic ski accident at Whiteface Mountain Ski Center, which is owned by defendant and operated by the Olympic Regional Development Authority (hereinafter ORDA). On the day of the accident, claimant Richard M. Hyland (hereinafter claimant), a ski coach and self-described "advanced intermediate" skier with over 20 years of skiing experience, was present at Whiteface to participate in a coaches' clinic sponsored by the U.S. Ski Coaches Association. While skiing down one of the expert trails during a clinic exercise, he allegedly encountered a "bare spot" in the trail, causing him to lose control and slide into a wooden fence. The fence was placed at the outer limits of an area of trees and brush and also marked the intersection of the trail on which claimant was skiing with another trail.

Claimant, who was rendered quadriplegic as a result of the accident, and his wife, derivatively, commenced this claim contending that defendant was negligent in failing to mark the bare spot on which he fell and in the design and placement of the fence. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the claim, with claimants cross-moving for partial summary judgment on the issue of liability. At issue on appeal is the propriety of the Court of Claims' decision on these motions, namely, the court granted that aspect of defendant's motion pertaining to the bare spot, but denied that part concerning the fence, unwilling to conclude that the fence was an inherent risk of skiing. Both parties appeal.

The issues in this case center on whether claimant assumed the risk of injury from the bare spot he encountered causing him to fall and/or his subsequent collision with the fence. To be sure, "downhill skiing, like many other sports, contains inherent risks including, but not limited to, the risks of personal injury * * * which may be caused by * * * bare spots * * * or other natural objects or man-made objects that are incidental to the provision or maintenance of a ski facility" (General Obligations Law § 18-101). If a downhill recreational skier vol-

untarily participates in the activity, the duty of the ski facility is limited "to mak[ing] the conditions as safe as they appeared to be and if the risks of the activity were fully comprehended or perfectly obvious, [the skier] consented to them and [the facility] performed its duty" (*Giordano v Shanty Hollow Corp.*, 209 AD2d 760, 760, *lv denied* 85 NY2d 802, citing *Turcotte v Fell*, 68 NY2d 432, 439). Whether such participant assumed a particular risk, in turn, depends on whether he or she had knowledge of the risk and appreciated it, given his or her skill and experience level (*see Morgan v State of New York*, 90 NY2d 471, 485-486; *Giordano v Shanty Hollow Corp., supra*).

We first turn to the Court of Claims' determination dismissing that part of the claim predicating liability on the bare spot. According claimants every favorable inference on this particular issue, as we must and as did the Court of Claims, it must be assumed that claimant's fall was caused by a bare spot on the trail. The issue then turns on whether he assumed the risk of such an occurrence. The record reveals that claimant was an experienced skier who, on the day of the accident, had been specifically informed that conditions at Whiteface were "spring conditions," which included the presence of bare spots and thin cover on the trails (*cf. Sytner v State of New York*, 223 AD2d 140). Claimant had also skied one or two runs before the accident and, thus, had an opportunity to become familiar with the general conditions that day. Under these circumstances, the Court of Claims properly concluded that claimant assumed the risk of injury from the bare spot (*see Giordano v Shanty Hollow Corp., supra*; *Calabro v Plattekill Mt. Ski Ctr.*, 197 AD2d 558, *lv denied* 83 NY2d 754; *cf. Sytner v State of New York, supra*).*

Relying on the related principle that a hazard which has been unreasonably concealed is not within the range of risks assumed in a recreational sporting activity (*see e.g. Roberts v Ski Roundtop*, 212 AD2d 768), claimants argue that the subject bare spot was in fact concealed. They base this contention on the fact that a different bare spot on the opposite side of the trail was highlighted with an orange marker. We are unpersuaded. Marking a particular bare spot on a ski trail does not "conceal" all others and does not reasonably create the impression that the entire trail is otherwise free of such conditions, particularly for an experienced skier such as claimant who had been forewarned of bare spots that day.

---

* Claimants nonetheless contend that defendant should be found liable for this bare spot because Whiteface employees violated an "established" safety policy by failing to mark it with an orange marker. There was insufficient proof, however, that any such *policy* indeed existed at Whiteface.

We now turn to that portion of the claim which predicates liability on the existence of the wooden fence. Upon our review of the record, we disagree with the Court of Claims' determination that triable issues of fact have been raised on this issue. The testimonial and photographic evidence in the record demonstrate that the subject fence was an open and obvious structure which existed on the boundary of a ski trail. Numerous ORDA officials and employees testified and/or averred that the fence was one of many such fences installed at Whiteface to, inter alia, "hold snow" on its particularly steep slopes, to define the intersection of trails and to protect terrain (see Simoneau v State of New York, 248 AD2d 865). We are satisfied that such showing sufficiently demonstrated that the fence was a man-made object incidental to the provision and maintenance of Whiteface (see General Obligations Law § 18-101) such that claimant assumed the risk of colliding with it that day (see Simoneau v State of New York, supra).

Although one of claimants' experts opined that the fence "does not serve a useful purpose," this assertion is unsupported and wholly conclusory. This expert makes no attempt to specifically combat the numerous established purposes of this fence, instead opining generally, without elaboration or detail, that it served no useful purpose. Moreover, another of claimants' experts purports only to contradict one of the numerous established purposes of the fence. Under these circumstances, claimants failed to raise a triable issue of fact regarding whether claimant assumed the risk of colliding with the fence (see generally Amatulli v Delhi Constr. Corp., 77 NY2d 525, 534; Martin v Village of Tupper Lake, 282 AD2d 975, 976-977). Moreover, that Whiteface could have replaced the subject fence with other barriers, such as nylon fencing, foam-filled bags or vegetation, is not dispositive where, as here, the risk is open and obvious to an experienced skier like claimant (see Simoneau v State of New York, supra). Nor did defendant have a duty to pad the fence, which was clearly a boundary fence not "within the confines of the ski trail" itself (Basilone v Burch Hill Operations, 199 AD2d 779, 780; see Fabris v Town of Thompson, 192 AD2d 1045, 1046-1047; Nagawiecki v State of New York, 150 AD2d 147; cf. General Obligations Law § 18-103 [12]; 12 NYCRR 54.7) and open and obvious to all skiers.

Crew III, J.P., Peters and Kane, JJ., concur. Ordered that the order is modified, on the law, without costs, by reversing so much thereof as partially denied defendant's motion; motion granted in its entirety and claim dismissed; and, as so modified, affirmed.