Bodden v Holiday Mtn. Fun Park Inc. (2021 NY Slip Op 07330)





Bodden v Holiday Mtn. Fun Park Inc.


2021 NY Slip Op 07330


Decided on December 23, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 23, 2021

531832
[*1]Daniella Bodden et al., Appellants,
v
Holiday Mountain Fun Park Inc. et al., Respondents.

Calendar Date:November 18, 2021

Before:Garry, P.J., Lynch, Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Katler, Kaplan, Zeiger & Forman, Woodbourne (Terry S. Forman of counsel), for appellants.
Roemer Wallens Gold & Mineaux, LLP, Albany (Matthew J. Kelly of counsel), for respondents.



Lynch, J.
Appeal from an order of the Supreme Court (Schreibman, J.), entered May 12, 2020 in Sullivan County, which granted defendants' motion for summary judgment dismissing the complaint.
On January 1, 2014, plaintiff Daniella Bodden, then 16 years old, was injured while skiing at Holiday Mountain Fun Park, a facility in Sullivan County owned and operated by defendants. Bodden, a first time skier, rented equipment from the facility and received a private one-hour lesson from a ski instructor there. The lesson took place on a slope referred to as the "bunny hill." After the instructor showed plaintiff the pizza wedge technique for turning and stopping, plaintiff and the instructor went down the bunny hill together five or six times. By that point, the instructor felt that plaintiff was ready to progress to one of the designated trails known as Benson's Glade. Although Bodden expressed some concern, the instructor assured both Bodden and her mother, plaintiff Lola Bernard, that Bodden was ready and that the instructor would be with Bodden the entire time. Coming down Benson's Glade, Bodden gained too much speed and "lost control," eventually crashing into an orange safety fence at the base of the trail, injuring herself.
As a result, Bodden and her mother, derivatively, commenced this negligence action against defendants, alleging, among other things, that Bodden's injuries were caused by defendants' negligence in failing to gauge her skill level and in "improperly advancing [her] to an intermediate ski trail far beyond her skill and ability." Defendants answered and raised several affirmative defenses, including that the action was barred by the doctrine of primary assumption of risk. Following discovery, defendants moved for summary judgment dismissing the complaint on that ground. Plaintiffs opposed the motion, arguing, among other things, that questions of fact existed as to whether the actions of Bodden's instructor increased the risk of injury and whether Bodden fully appreciated and assumed the risk. Emphasizing that plaintiffs failed to produce any evidence that Bodden was unable to perform the necessary wedge technique for slowing down and stopping or that the trail utilized was unsuitable for novice lessons, Supreme Court granted defendants' motion and dismissed the complaint, finding that "[t]he risk of this type of injury cannot be described as anything other than inherent to the sport [of skiing] and should have been comprehended even by a novice." Plaintiffs appeal.
Under the assumption of risk doctrine, "a ski area operator is relieved from liability for risks inherent in the sport of downhill skiing . . . when the participant is aware of, appreciates and voluntarily assumes those risks" (de Lacy v Catamount Dev. Corp., 302 AD2d 735, 735-736 [2003]; see Schorpp v Oak Mtn., LLC, 143 AD3d 1136, 1138 [2016]). "Whether a participant is aware of and appreciates a particular risk must be assessed against the background of the skill [*2]and experience of the participant" (de Lacy v Catamount Dev. Corp., 302 AD2d at 736 [internal quotation marks and citations omitted]).
Under New York's Safety in Skiing Code (see General Obligations Law art 18), the Legislature has determined that downhill skiing contains inherent risks that may result in personal injury (see General Obligations Law § 18-101; see Fabris v Town of Thompson, 192 AD2d 1045, 1046 [1993]). In light of such recognition, both skiers and ski area operators have certain defined duties (see General Obligations Law §§
18-103, 18-105). Pertinent here, skiers have a duty "[n]ot to ski beyond their limits or ability to overcome variations in slope, trail configuration and surface or subsurface conditions" (General Obligations Law § 18-105 [2]). A skier must also "remain in constant control of speed and course at all times while skiing so as to avoid contact with plainly visible or clearly marked obstacles and with other skiers and passengers" (General Obligations Law § 18-105 [4]). Ski operators, in turn, are charged with having "personnel appropriately trained in the instruction of skiers . . . in methods of risk reduction while using ski slopes . . . and . . . with respect to the risks inherent in the sport" (General Obligations Law § 18-103 [14]).
In support of their motion for summary judgment, defendants submitted, among other things, Bodden's deposition testimony, wherein she acknowledged that the instructor began the lesson on the bunny hill, where she taught Bodden the wedge technique for stopping and slowing down and answered all of her questions. Although Bodden did not fall while on the bunny hill, she "felt that [she] didn't know how to completely stop because the end of the bunny hill [was] kind of flat, so [skiers] stop on [their] own" there. She described feeling only "somewhat confident" at that time. Bodden testified that, after going down the bunny hill five or six times, the instructor expressed her belief that Bodden was ready to try Benson's Glade trail. Bodden asked the instructor whether she was "sure" of that assessment, to which the instructor allegedly responded, "Yes, I'll be with you the whole entire time. Don't worry." In response, Bodden said, "Okay."
Bodden maintained that, while on the chair lift, she informed the instructor that she did not feel confident going down a big hill and, after exiting the chair lift and proceeding to the top of Benson's Glade, stated that she was nervous. According to Bodden, the instructor responded that she "shouldn't be worried" and she was "going to be with [Bodden] the entire time." Although Bodden attempted to do the pizza wedge technique on Benson's Glade, she lost control about half-way down the trail. Bodden testified that she yelled out to the instructor asking for help because she could not slow down, but the instructor did not tell her to sit down to stop her momentum. Upon reaching the end of the trail, Bodden made a left turn onto a [*3]flat runout area and hit a fence located on the left of the runout near one of the chair lifts. The fence served as a warning to skiers that the lift path was on the other side and prevented skiers from entering that area. Bodden acknowledged during her deposition that she knew the risks of falling and injuring herself before beginning the ski lesson.
The instructor's deposition testimony differs in certain crucial respects. She testified that, because she was aware that Bodden was a novice skier, she began by teaching Bodden the basics, "telling her that the pizza was going to be her best friend and it would be the thing that helped her slow down and stop." The instructor maintained that she also taught Bodden how to turn and told Bodden that she "would be with her the entire time." Although the instructor could not recall how many times Bodden went down the bunny hill before advancing to the other ski trail, she testified that the bunny hill "took up most of the lesson" — approximately 45 minutes — and that Bodden did not exhibit any instability or problems navigating the hill. Near the end of the lesson, the instructor told Bodden that she was doing very well and that she felt Bodden was ready to go down a "beginner hill." According to the instructor, Bodden told her she felt comfortable with that plan. The instructor further testified that, upon reaching the top of Benson's Glade, she told Bodden to stay in a pizza wedge formation and informed her that "if she felt the need to stop, that [they] could stop." The instructor confirmed that Bodden was initially in control as they proceeded together down Benson's Glade, but Bodden's ski tips "started coming . . . apart" towards the middle of the trail, causing her to gain speed and pass in front of the instructor. The instructor was adamant that she "told [Bodden] multiple times to widen her pizza" and also instructed her to "try and fall over." The instructor testified that she tried to grab Bodden's jacket towards the end of Benson's Glade near a "sharper turn" where she had "witnessed multiple people coming straight down and ending up in the trees," but was unsuccessful. It is telling that the instructor, a very experienced skier, acknowledged that Bodden was "going at such a speed" that she was unable to catch up to her.
In addition to the foregoing, defendants also submitted an affidavit from the instructor, who averred that, although Benson's Glade is "marked as a 'more difficult' blue square on the trail map," it is, in reality, "more in line with the difficulty level that a skier would typically expect of a green trail." In that regard, she explained that, because this ski area has "fewer trails and less skiable terrain . . . than many other ski areas in New York," the difficulty levels of its trails are inflated. According to the instructor, "[a]part from the [bunny] hill . . . Benson's Glade was the easiest open trail at Holiday Mountain [and] [was] often used for lessons [*4]with novice skiers." There was, however, an easier green circle trail that was closed.
On this record, defendants did not meet their prima facie burden to establish the absence of a triable issue of fact on the doctrine of primary assumption of risk. A factual dispute remains as to whether Bodden expressed reservations to the instructor about whether she was ready to progress to Benson's Glade and whether the instructor encouraged her in a manner that was overzealous under the circumstances. It is also unclear whether the instructor taught Bodden, before going on the trail, how to safely fall if she could not remain in the pizza wedge formation, and whether she yelled out to Bodden to do so after she lost control. Although Bodden conceded that she knew the risks associated with skiing and had successfully completed several runs down the bunny hill, she had limited opportunity to practice the technique that she had been taught for slowing down and stopping under real life circumstances, as the bunny hill was primarily flat and, according to Bodden, "skiers stop[ped] on their own there." Not to be overlooked is the fact that Bodden was a novice skier and was taken on a trail designated as intermediate on the trail map. We recognize that defendants proffered an affidavit from the instructor explaining that, although Benson's Glade is formally designated an intermediate trail, it is more akin to a beginner's trail. Notably, however, the instructor revealed that she was aware of an area of Benson's Glade that had a "sharper turn" and had "witnessed multiple people coming straight down and ending up in the trees" near that area. Such testimony creates a question of fact as to whether Benson's Glade was appropriate for a novice skier such as Bodden. Viewing the evidence in the light most favorable to plaintiffs, we conclude that triable issues of fact exist as to whether the instructor unreasonably increased the risk of injury and whether Bodden voluntarily assumed such risk (see Zhou v Tuxedo Ridge, LLC, 180 AD3d 960, 964 [2020]; de Lacy v Catamount Dev. Corp., 302 AD2d at 736).
We further agree with plaintiffs that the provisions of the equipment rental form under which Bodden purportedly agreed to "assum[e] all risks of death or injury to any part of [her] body while using th[e] equipment" (emphasis added) and to release defendants of liability, to the extent permitted by law, for any injuries resulting from their negligence, do not preclude recovery under the circumstances presented (see General Obligations Law § 5-326; Vanderwall v Troser Mgt., 244 AD2d 982, 982-983 [1997], lv denied 91 NY2d 811 [1998]; Owen v R.J.S. Safety Equip., 169 AD2d 150, 155 [1991], affd 79 NY2d 967 [1992]).
Garry, P.J., Aarons, Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the order is reversed, on the law, with costs, and motion denied.