Bishop v State of New York (2023 NY Slip Op 04164)

Bishop v State of New York

2023 NY Slip Op 04164

Decided on August 3, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:August 3, 2023

535297
[*1]Robert Bishop, Appellant,
v
State of New York et al., Respondents.

Calendar Date:June 8, 2023

Before:Garry, P.J., Egan Jr., Pritzker, Reynolds Fitzgerald and McShan, JJ.

Devitt Spellman Barrett, LLP, Smithtown (Christi M. Kunzig of counsel), for appellant.
Letitia James, Attorney General, Albany (Owen Demuth of counsel), for respondents.

McShan, J.
Appeal from a judgment of the Court of Claims (Catherine E. Leahy-Scott, J.), entered April 4, 2022, upon a decision of the court in favor of defendants.
Claimant, a self-described intermediate to expert snowboarder, was injured when, while snowboarding at Belleayre Mountain Ski Center, operated by defendant Olympic Regional Development Authority and owned by defendant State of New York, he made contact with a metal bolt protruding out of the side of a telephone pole. Claimant subsequently commenced this negligence action against defendants. Following the liability portion of a bifurcated trial, defendants moved for dismissal of the claim. The Court of Claims thereafter rendered a determination and directed a verdict in favor of defendants and dismissed the claim, prompting claimant's appeal.[FN1]
We affirm. "The primary assumption of risk doctrine . . . is based on the premise that one who takes part in a sport accepts the dangers that inhere in it so far as they are obvious and necessary" (Grady v Chenango Val. Cent. Sch. Dist., ___ NY3d ___, ___, 2023 NY Slip Op 02142, *1 [2023] [internal quotation marks, brackets, ellipsis and citations omitted]; see Schorpp v Oak Mtn., LLC, 143 AD3d 1136, 1137 [3d Dept 2016]). "A person who participates in downhill skiing [or snowboarding] assumes the usual risks inherent in that activity (i.e., those that are known, apparent or reasonably foreseeable)" (Clauss v Bush, 79 AD3d 1397, 1398 [3d Dept 2010]; see Bodden v Holiday Mtn. Fun Park Inc., 200 AD3d 1432, 1433 [3d Dept 2021]), including "[artificial] objects that are incidental to the provision or maintenance of a ski facility" (Jordan v Maple Ski Ridge, 229 AD2d 756, 757 [3d Dept 1996] [internal quotation marks and citation omitted]; see Dailey v Labrador Dev. Corp., 136 AD3d 1380, 1381 [4th Dept 2016]). "The application of the assumption of risk doctrine must be measured against the background of the skill and experience of the particular [claimant]" (Schorpp v Oak Mtn., LLC, 143 AD3d at 1137 [internal quotation marks and citations omitted]; see Bodden v Holiday Mtn. Fun Park Inc., 200 AD3d at 1433; Sharrow v New York State Olympic Regional Dev. Auth., 307 AD2d 605, 607 [3d Dept 2003]). As relevant here, in recognition of the inherent risks that may result in personal injury in downhill skiing or snowboarding, ski operators are charged with marking artificial obstructions incidental to the provision or maintenance of the ski facility that are located within the borders of the designated slope or trail when the top of said obstructions is less than six feet above snow level, inspecting trails twice per day and ensuring that lift towers located within the boundaries of any ski slope are free of protruding metal objects (see General Obligations Law § 18-103 [4], [6], [12], [13]; Bodden v Holiday Mtn. Fun Park Inc., 200 AD3d at 1433). Further, "skiers have a duty '[n]ot to ski beyond their limits or ability to overcome variations in slope, trail configuration [*2]and surface or subsurface conditions' " and to " 'remain in constant control of speed and course at all times while skiing so as to avoid contact with plainly visible or clearly marked obstacles and with other skiers and passengers' " (Bodden v Holiday Mtn. Fun Park Inc., 200 AD3d at 1433, quoting General Obligations Law § 18-105 [2], [4]; see Clauss v Bush, 79 AD3d at 1399).
At trial, claimant testified that the ski slope on which the accident occurred was an easy slope. About halfway down the slope, claimant observed the pole and decided that he wanted to travel around the left side of the pole. According to claimant, he encountered snow that "wasn't really groomed," along with snowmaking equipment in his path, prompting him to attempt to maneuver between the pole and said equipment. In doing so, claimant struck a bolt that was protruding from the pole. Although claimant testified that he does not remember seeing any signage in that area while he was snowboarding, he acknowledged the presence of several hazard markings in photographs depicting the accident site shortly after the accident occurred. Consistent with claimant's account, two individuals whom claimant was snowboarding with on the day of the accident testified that they observed claimant fall after he struck the protruding metal bolt while "squeez[ing] through [the] pole and a snowmaker." While both individuals could not recall seeing signs or other markers on the day of the accident, they too conceded that hazard markers were present in the photographs of the accident site and that those markers indicate that the area in question is a "no ski area" beyond the edge of the trail.
The operational supervisor at the facility on the day of claimant's accident testified that the pole was located between the edge of the designated slope and about 10 feet from the tree line, in a closed area. He testified that there was signage demarcating the area of the accident as "closed," which was intended to prevent patrons from cutting through the woods. There was also a post with a red circle on top immediately adjacent to the closed area and two additional posts with the red circles to the right of the pole, which served to warn patrons of the existence of the closed sign. The supervisor further specified that the pole was 15 feet from the groomed surface of the ski slope. Similarly, three ski patrol members each testified that the area in which the accident occurred was not on the groomed ski slope but was off the side of the trail in an area considered off-skiable terrain as indicated by the presence of hazard and closed signage. The first ski patrol worker to reach claimant after the accident highlighted that it would be "highly unlikely" that a patron would "try[ ] to go through [the area between the pole and trees]." Moreover, as part of daily operations, the operational supervisor and the ski patrol members testified that each slope is inspected, at a minimum, twice each day for dangerous or [*3]hazardous conditions.
Claimant primarily contends that defendants breached their duty of care because, irrespective of the visibility of the pole itself, the protruding bolt was not readily visible or an inherent risk of snowboarding.[FN2] We disagree. The photographs of the pole taken shortly after the accident clearly locate it beyond the signage indicating the outer limits of the ski trail and mere feet from, as acknowledged by claimant, "plainly visible" snowmaking equipment (see Nagawiecki v State of New York, 150 AD2d 147, 150 [3d Dept 1989]; see also General Obligations Law § 18-101; compare Madsen v Catamount Ski Resort, 165 AD3d 475, 475 [1st Dept 2018]; Fabris v Town of Thompson, 192 AD2d 1045, 1046 [3d Dept 1993]). Moreover, the bolt, in being attached to the visible pole and protruding but a few inches toward the tree line rather than the groomed trail, was not a "concealed or unreasonably increased risk[ ] or unique and dangerous condition[ ]," beyond what the pole itself presented (Martin v State of New York, 64 AD3d 62, 64 [3d Dept 2009] [internal quotation marks, ellipsis and citations omitted], lv denied 13 NY3d 706 [2009]; see Simoneau v State of New York, 248 AD2d 865, 866-867 [3d Dept 1998]). In this respect, considering claimant's admitted expertise alongside his voluntary decision to snowboard toward the pole and maneuver around it at a close distance, it follows that he fully appreciated the risks of contacting the pole and, by consequence, the protruding bolt (see Schorpp v Oak Mtn., LLC, 143 AD3d at 1137; Hyland v State of New York, 300 AD2d 794, 796 [3d Dept 2002], lv denied 100 NY2d 54 [2003]; Ruepp v West Experience, 272 AD2d 673, 674 [3d Dept 2000]; Covel v Mt. Mansfield Co., 237 AD2d 791, 792-793 [3d Dept 1997]; Nagawiecki v State of New York, 150 AD2d at 150; compare Basilone v Burch Hill Operations, 199 AD2d 779, 780 [3d Dept 1993]; Alberti v State of New York, 172 AD2d 471, 471 [2d Dept 1991]). Finally, we reject claimant's contention that defendants violated General Obligations Law § 18-103, as there is no dispute that the accident area was outside the borders of the trail, and defendants properly maintained and inspected the slope, warned patrons of dangerous and/or hazardous conditions through signage and otherwise kept the trail in a safe condition (compare Basilone v Burch Hill Operations, 199 AD2d at 780; Fabris v Town of Thompson, 192 AD2d at 1047). Altogether, giving the appropriate deference to the Court of Claims' factual findings and credibility determinations (see Weinberger v New York State Olympic Regional Dev. Auth., 133 AD3d 1006, 1007 [3d Dept 2015]), we find that the court's decision to find in favor of defendants is supported. Claimant's remaining contentions, to the extent not explicitly addressed herein, have been considered and found to be unavailing.
Garry, P.J., Egan Jr., Pritzker and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed, without costs.

Footnotes

Footnote 1: Although the Court of Claims stated in its written decision that it was granting defendants' motion to dismiss the claim, the court made factual findings and credibility determinations upon which the dismissal was premised. In this respect, while not explicitly stated in its decision, it is evident that the court rendered a "verdict in defendant[s'] favor [while] acting as a factfinder," and we assess the determination under that posture (Galloway v State of New York, 194 AD3d 1151, 1152 [3d Dept 2021] [internal quotation marks and citation omitted]).

Footnote 2: To this point, we note that claimant does not dispute that the pole itself, which had a light fixture affixed to its top and a stanchion for snowmaking equipment, was incidental to the operation of defendants' facility.