Katleski v Cazenovia Golf Club, Inc. (2024 NY Slip Op 01366)

Katleski v Cazenovia Golf Club, Inc.

2024 NY Slip Op 01366

Decided on March 14, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:March 14, 2024

CV-23-0642
[*1]David Katleski, Respondent,
v
Cazenovia Golf Club, Inc., Appellant, et al., Defendants.

Calendar Date:January 17, 2024

Before:Aarons, J.P., Pritzker, Lynch, Fisher and Mackey, JJ.

Mackenzie Hughes LLP, Syracuse (W. Bradley Hunt of counsel), for appellant.
Edelman, Krasin & Jaye, PLLC, Westbury (Kara M. Rosen of counsel), for respondent.
Ferrara Fiorenza PC, East Syracuse (Nicole Marlow-Jones of counsel), for National Golf Course Owners Association, amicus curiae.

Lynch, J.
Appeal from an order of the Supreme Court (Joseph A. McBride, J.), entered March 10, 2023 in Madison County, which denied a motion by defendant Cazenovia Golf Club, Inc. for summary judgment dismissing the complaint against it.
On June 20, 2020, plaintiff — an experienced golfer — was struck in the left eye by a golf ball while participating in a golf tournament held by defendant Cazenovia Golf Club, Inc. (hereinafter defendant). Plaintiff was riding in a golf cart on the seventh hole fairway when he was hit by a ball struck by defendant Justin Hubbard, who had just teed off from the third hole. Both the third and seventh holes are over 400 yards in length. The fairways on each hole run parallel, in part, in the area in front of the third tee, and that part of the seventh fairway approaching the green, which from a vantage point on the fairway, is adjacent to and to the right of the third tee. Plaintiff commenced this action seeking compensation for his serious injury, alleging, as relevant here, that defendant negligently operated a dangerously designed golf course that unreasonably enhanced the risk of being struck by a golf ball. Following joinder of issue and discovery, defendant moved for summary judgment dismissing the complaint, arguing that it could not be held liable for plaintiff's injuries because, by engaging in the recreational sport of golf, he voluntarily assumed the risk of being hit by a ball. Supreme Court denied the motion, finding that there were triable issues of fact as to whether defendant unreasonably enhanced the risk of being hit with a golf ball, thereby "creat[ing] a danger over and above the inherent dangers of the sport."[FN1] Defendant appeals.
Under the doctrine of primary assumption of risk, one who participates in a sport or recreational activity "consents to those commonly appreciated risks which are inherent in and arise out of the nature of the sport generally and flow from such participation" (Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 93-95 [2023]; Delaney v MGI Land Development, 72 AD3d 1254, 1254-1255 [3d Dept 2010]). The doctrine precludes liability for injuries sustained during such qualified activities "when a consenting participant . . . is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks" (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d at 95 [internal quotation marks and citations omitted]) — questions that are "measured against the background of the skill and experience of the particular [plaintiff]" (Bishop v State of New York, 219 AD3d 994, 995 [3d Dept 2023] [internal quotation marks and citations omitted]). A plaintiff need not "have foreseen the exact manner in which his or her injury occurred, so long as he or she [wa]s aware of the potential for injury of the mechanism from which the injury results" (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d at 95 [internal quotation marks [*2]and citation omitted]). Moreover, "it is well settled that the doctrine . . . may encompass risks engendered by less than optimal conditions, provided that those conditions are open and obvious and that the consequently arising risks are readily appreciable" (McQuillan v State of New York, 218 AD3d 864, 866-867 [3d Dept 2023] [internal quotation marks and citation omitted]). However, a participant in a qualified activity is not "deemed to have assumed risks that are concealed or unreasonably enhanced" (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d at 95[internal quotation marks and citation omitted]).
Regarding golf in particular, it is well established that "being hit without warning by a shanked shot" is "a commonly appreciated risk" of participating in the sport (Anand v Kapoor, 15 NY3d 946, 948 [2010] [internal quotation marks omitted]; see Rinaldo v McGovern, 78 NY2d 729, 733 [1991]; Delaney v MGI Land Development, 72 AD3d at 1255; Milligan v Sharman, 52 AD3d 1238, 1239 [4th Dept 2008]). " '[G]olfers are deemed to assume the risks of open topographical features of a golf course' "(Milligan v Sharman, 52 AD3d at 1239, quoting Brust v Town of Caroga, 287 AD2d 923, 925 [3d Dept 2001]), and "evidence establishing that the proximity of [a tee] to [a different] green and hole was open and obvious" will preclude liability against a golf course for injuries sustained as a result of such proximity (Milligan v Sharman, 52 AD3d at 1239; see generally Hornstein v State of New York, 46 Misc 2d 486, 487-488 [Ct Cl 1965], affd 30 AD2d 1012 [1968]).
In support of its summary judgment motion, defendant submitted, among other things, expert affidavits and deposition testimony from the parties, other golfers who participated in the tournament, and defendant's employees. As for the deposition testimony, plaintiff, an experienced golfer who had been playing the sport for "as long as [he] c[ould] remember," explained that he was a member of defendant's golf club at the time of the accident and had played on the course "[a] hundred" times, including around 20 times in the months prior to his injury. Plaintiff conceded that he was "[a]bsolutely" aware of the risks of being hit by a golf ball while engaging in the sport, explained that golfers routinely yell "fore" as a warning to anyone standing or moving in the flight of a ball, and revealed that, upon hearing such warning, it is standard practice for nearby players to "tuck [their] head into [their] arms towards [their] knees."
As for the circumstances precipitating the accident, plaintiff explained that the rules of the tournament provided for a "[s]hotgun start" whereby each group would begin at a different hole. He was aware that there would be groups playing both in front of and behind him. The players were scheduled to play 27 holes, hitting from the white tee (later referred to as tee A) in the first round, the red tee in the second round and back to the white tee in the third round. The accident occurred [*3]as plaintiff began the third round, starting from the seventh hole.
When plaintiff arrived at the third tee in the first round, he observed that there were three tee locations, with tee A located toward the back of the tee box in a location he had never previously used. He maintained that the view of the seventh hole fairway was obstructed from this location, which was not the case with the other tees at this hole. Worried that the location of tee A was "dangerous" due to inadequate sight lines, plaintiff testified that he shared his concern with the other golfers. Nevertheless, plaintiff continued to play. Later in the day, while riding in a golf cart on the seventh hole fairway, plaintiff was struck in the eye with Hubbard's errant drive. Before he was hit, plaintiff did not hear anything or see anyone in the vicinity. Ryan Lockwood — plaintiff's tournament partner — also gave deposition testimony to that effect, stating that he did not know where the errant ball came from and only subsequently learned that it had come from tee A on the third hole, which was not visible from the location of their golf cart. Hubbard testified during his deposition that, when he took the shot from the third tee, he did not observe any other players on the seventh hole fairway, explaining that an elevated green and lightning shed obstructed his view. He maintained that the group he was playing with yelled "fore" as his drive hooked into the seventh hole fairway, as was customary.
As for the course topography, Jeffrey Moesch, defendant's employee and the course superintendent, acknowledged during his deposition that defendant did not utilize a contractor or architect when making course modifications. As it turns out, the record shows that tee A was added in 2010. Regarding the June 2020 tournament, Moesch explained that there are several tee locations at hole three and, on the date of the tournament, tee A — located at the back of the tee box — was utilized. He acknowledged that tee A is typically reserved for tournaments and that the seventh hole fairway is not observable from this location, but emphasized that he had never received a prior complaint about the location of this tee. Dennis Colligan, the club's designated golf professional, reiterated as much in his affidavit, explaining that tee A was installed to increase the difficulty of the hole "to conform with more modern golf."
Defendant also submitted an affidavit from Barry Jordan, a golf course architect. Jordan explained that the golf course consists of nine holes built in 1924. As a "classic" course, its "tees and greens [are] in close proximity to one other, often sharing a high point or elevated feature in the landscape." Jordan averred that the layout between holes three and seven is typical for a classic course, whereas more modern courses generally "provide greater separation between tees and greens and wider safety zones that delineate 'probable areas of play' " (emphasis omitted). He further opined [*4]that there were no "industry standard[s], rule[s] or regulation[s] requiring [defendant] to re-design or re-build its holes to accommodate all possible shots" and "no authoritative texts or guidelines which establish minimum standards for golf course design." Jordan, who personally inspected holes three and seven, did not observe any concealed or hidden conditions as to the topography and opined that neither the topography of the course nor the proximity of these holes unreasonably increased the risk "that a player on the [seventh] fairway [would] be struck by [an] errant tee shot from the back tee of the [third] hole." He elaborated that there were no industry standards requiring a barricade to be installed between adjacent holes or requiring the placement of signage warning of blind spots. While he noted that "the presence of golfers at the back tee on [hole three] is not observable from the [seventh] fairway," he emphasized that "it [wa]s reasonable to assume that players having already played hole [three] before playing hole [seven] . . . are aware that the view is obstructed by the natural topography of the two holes." Finally, he opined that the placement of tee A did not unreasonably increase the risk that a player on the seventh fairway would be struck by an errant tee shot from the third tee.
Defendant also presented the expert affidavit of Michael Doctor — a professional golfer and coach — who echoed many of Jordan's opinions. Doctor explained that written guidance provided by organizations such as the Professional Golfers' Association of America (hereinafter PGA) constitute "best practice[/]instructive recommendations" and are not "authoritative" guidelines that golf courses must follow. Nor is there a requirement that golf courses conduct safety audits or employ safety committees. As for the June 2020 tournament, Doctor noted that "shotgun starts" are not uncommon and that "[t]he risk of being struck by a golf ball is an inherent risk of the game of golf." After personally inspecting holes three and seven, he concluded that "there was no violation of any [United States Golf Association] rules" when Hubbard took the shot from the third tee and, since plaintiff was not in the intended path of the shot, Hubbard was not obligated to "attempt to observe if there were golfers on the [seventh] fairway before taking his tee shot." Doctor opined, within a reasonable degree of professional certainty, that the course was "reasonably and appropriately operated, managed, and maintained on the date of [plaintiff's] accident and did not contravene the tournament's stated rules."
On this record, defendant demonstrated its prima facie entitlement to judgment as a matter of law dismissing the complaint. Being hit by a golf ball while participating in the sport is a commonly appreciated risk of golf (see Anand v Kapoor, 15 NY3d at 948; Delaney v MGI Land Development, 72 AD3d at 1255; Milligan v Sharman, 52 AD3d at 1239) and plaintiff acknowledged during [*5]his deposition that he was well aware of and appreciated this risk. Plaintiff was aware of the location of tee A yet continued to play in the tournament despite his concerns. Defendant's experts further established that the topography and layout of the subject course — including the proximity between the fairways and tees — was standard for a classic golf course and that defendant had no duty to eliminate or otherwise mitigate this risk. Accordingly, the burden shifted to plaintiff to raise a triable issue of fact in opposition to the motion.
To that end, plaintiff submitted affidavits from Stephen Eisenberg, a PGA-certified golf professional, and James Weiss, a professional golfer and coach. Eisenberg "strongly disagree[d] with the assertion that there are no generally accepted standards in golf course operations," opining that PGA manuals placed upon defendant a duty to prioritize the safety of its golfers and to undertake safety measures when modifying a particular golf hole. He specifically opined that tee A on the third hole "should not have been created" because the seventh hole fairway is not visible from this location. According to Eisenberg, the placement of tee A increased the risk that another player would be struck by a ball, was "out of prudent golf course design" and its use during an event like the June 2020 tournament was "reckless and dangerous." Eisenberg further opined that the lightning shed located adjacent the third tee box exacerbated the danger by obstructing the view of the seventh fairway. Ultimately, Eisenberg concluded that the golf course "fell drastically below safety practices and guidelines" by not having warning signs or barriers between holes three and seven, and by failing to conduct safety audits.
Weiss agreed with many of these contentions, averring that "[t]here are absolutely industry standards with respect to the operation and management of golf courses," including holding regular safety evaluations and consulting an architect when modifying a golf course in any way. He similarly opined that tee A and the lightning shed were improperly placed, and, given the proximity of holes three and seven, a barrier should have been erected to prevent errant shots from the third hole striking golfers on the seventh hole fairway.
We recognize that the parties' experts came to differing conclusions about whether there were industry standards governing this type of situation, whether defendant unreasonably increased the risk of injury through its placement of tee A at the third hole, and whether defendant should have placed warning signs or erected barriers between holes three and seven. That factual dispute, however, does not preclude judgment as a matter of law in defendant's favor under the circumstances presented. Even accepting the opinions of plaintiff's experts that the course failed to meet applicable safety standards (compare Thornberg v Town of Islip, 127 AD3d 1162, 1163 [2d Dept 2015]), "[t]he primary assumption [*6]of risk doctrine also encompasses risks involving less than optimal conditions" (Bukowski v Clarkson Univ., 19 NY3d 353, 356 [2012]; see Fritz v Waldon Playboys M.C. Inc., 217 AD3d 1293, 1294 [3d Dept 2023]). One who voluntarily participates in a sport under suboptimal conditions will be deemed to have assumed the risk of such conditions if the risks are "inherent to the sport" and "readily apparent to [the] plaintiff" (Bukowski v Clarkson Univ., 19 NY3d at 357). The duty owed in these circumstances is to make the "conditions as safe as they appear to be" (id. [internal quotation marks and citation omitted]). Indeed, "[i]f the risks of the activity are fully comprehended or perfectly obvious, [the] plaintiff has consented to them and [the] defendant has performed its duty" (id. at 356 [internal quotation marks and citation omitted]).
Here, the determinative fact is that plaintiff, a highly experienced golfer, knew of the risks involved in playing in the tournament and made an informed decision to keep doing so despite the lack of protective barriers and his asserted concern during the first round about the tee A location at hole three. The risk posed by playing under such suboptimal conditions — i.e., getting hit by a shanked shot — is inherent to the sport of golf and was readily apparent to plaintiff, who acknowledged his appreciation of the dangers involved (see Bukowski v Clarkson Univ., 19 NY3d at 356; Maddox v City of New York, 66 NY2d 270, 274-275 [1985] [professional baseball player who was "aware of the wet and muddy condition of the playing field on the night he was injured and of the particular puddle in which he fell . . . (and) had previously commented" on the dangerous condition assumed the risk of injury as a matter of law]; McQuillan v State, 218 AD3d at 867; Fritz v Walden Playboys M.C. Inc., 217 AD3d 1296 ["(W)here it is clear that the plaintiff was aware of a condition but nevertheless continued with his or her activity, the doctrine of primary assumption of risk has been applied"]; Milligan v Sharman, 52 AD3d at 1239; Joseph v New York Racing Assn., 28 AD3d 105, 109 [2d Dept 2006] [the plaintiff assumed risk of injury where he was aware of open and obvious wet conditions before being injured on the second lap around a riding ring]; see generally Benitez v New York City Bd. of Educ., 73 NY2d 650, 659 [1989]). In these circumstances, "the enhancement cases to which plaintiff refers" in arguing that he did not assume the risk of injury do not preclude an award of summary judgment to defendant (Maddox v City of New York, 66 NY2d at 278-279; compare Shapiro v City of Amsterdam, 96 AD3d 1211, 1212 [3d Dept 2012]).
The facts of this case are also readily distinguishable from Grady v Chenango Val. Cent. Sch. Dist. — the Court of Appeals' most recent decision applying the primary assumption of risk doctrine. In Grady, the Court of Appeals held that questions of fact precluded an award of summary judgment to the defendant school district [*7]for injuries sustained by a high school student during his participation "in a fast-moving, intricate [baseball] drill" (Grady v Chenango Cent. Sch. Dist., 40 NY3d at 98). "The drill involved two coaches hitting balls to players stationed in the infield, with one coach hitting to the
. . . second baseman who would, in turn, throw to a player at 'short first base,' positioned a few feet from regulation first base" (id.). Although a protective screen had been erected between the first baseman and the short first baseman, a ball intended for the short first baseman bypassed the screen and struck the plaintiff, who was in the group assigned to first base. Recognizing that the case was "close," the Court of Appeals nevertheless found that, under those "unique circumstances," it could not be said as a matter of law that the conditions of play were "as safe as they appeared to be" (id. at 99 [internal quotation marks, citations and brackets omitted]). Accordingly, because there were triable issues of fact as to whether the risks involved in participating in the drill were "concealed or unreasonably enhanced," the Court held that a jury should decide whether the plaintiff — who was aware of the mechanism of the drill and had previously participated in drills with multiple balls in play — had assumed the risk of injury (id. at 99-100 [internal quotation marks and citation omitted]).
The facts of this case are markedly different. As previously noted, application of the assumption of risk doctrine "is not to be determined in a vacuum" (Maddox v City of New York, 66 NY2d at 278), but instead "measured against the background of the skill and experience of the particular [plaintiff]" (Bishop v State of New York, 219 AD3d at 995 [internal quotation marks and citations omitted]). Plaintiff had been playing golf for over 50 years and was certainly familiar with the course. Moving a tee location back to make a golf tournament more competitive — even to a location where the adjacent fairway is obstructed from view — is not analogous to the highly dangerous and intricate baseball drill involved in Grady. There was no showing that doing so exposed plaintiff, who was sitting in a moving golf cart at the time of the incident, to a risk "over and above the usual dangers that are inherent in the sport" of golf (Delaney v MGI Land Dev., LLC, 72 AD3d at 1254-1255 [internal quotation marks and citations omitted]). Most significantly, unlike in Grady — where the protective barrier arguably made the drill appear safer than it actually was — the topography of the course and the tee A location at hole three were "as safe as they appear[ed] to be" (Bukowski v Clarkson Univ., 19 NY3d at 357 [internal quotation marks and citation omitted]; see Milligan v Sharman, 52 AD3d at 1239 ["(G)olfers are deemed to assume the risks of open topographical features of a golf course"]). Accordingly, plaintiff assumed the risk of injury, as a matter of law, when he continued to play despite his [*8]awareness and appreciation of the danger involved (compare Shapiro v City of Amsterdam, 96 AD3d at 1212-1213). Therefore, defendant should have been awarded summary judgment dismissing the complaint (see generally Roberts v Boys & Girls Republic, Inc., 51 AD3d 246, 251 [1st Dept 2008], affd 10 NY3d 889 [2008]).
Pritzker and Fisher, JJ., concur.
Mackey, J. (dissenting).
We agree with the majority that defendant Cazenovia Golf Club, Inc. (hereinafter defendant) demonstrated prima facie entitlement to summary judgment dismissing the complaint, based on plaintiff's primary assumption of risk (see Layden v Plante, 101 AD3d 1540, 1541 [3d Dept 2012]), thus shifting the burden to plaintiff to show the existence of a triable issue of fact. However, as the majority correctly observes, plaintiff has demonstrated the existence of a "factual dispute" as to whether defendant unreasonably enhanced the risks inherent in the game of golf (see Shapiro v City of Amsterdam, 96 AD3d 1211, 1212 [3d Dept 2012]). In our opinion, Supreme Court properly held that the existence of this key factual dispute was enough to defeat defendant's motion (see Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 99 [2023]). Because we believe the majority's conclusion to the contrary results from a misapplication of authority, we respectfully dissent.
Although the comparative negligence standard enacted by the Legislature in 1975 provides that a plaintiff's "assumption of risk . . . shall not bar recovery" (CPLR 1411), the long-standing common-law primary assumption of risk doctrine survives. Under that doctrine, "[a] person who chooses to participate in a sport or recreational activity consents to certain risks that are inherent in and arise out of the nature of the sport generally and flow from such participation" (Anand v Kapoor, 15 NY3d 946, 947-948 [2010] [internal quotation marks and citation omitted]). The principle "is thought of as limiting duty through consent — indeed, it has been described a 'principle of no duty' rather than an absolute defense based upon a plaintiff's culpable conduct" (Trupia v Lake George Cent. School Dist., 14 NY3d 392, 395 [2010] [citation omitted]). However, because the primary assumption of risk doctrine "does not, and cannot, sit comfortably with comparative causation . . . its application must be closely circumscribed if it is not seriously to undermine and displace the principles of comparative causation" (id.). Accordingly, exceptions have evolved. As relevant here, "[a] participant is not . . . deemed to have assumed risks that are concealed or unreasonably enhanced" (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d at 95 [internal quotation marks and citations omitted; emphasis added]).
"Tee A" on the third hole, from which the ball that struck plaintiff in the seventh fairway was hit, was constructed to give golfers the option of teeing off from farther back, thus making play more challenging. Although defendant's golf course is over 100 [*9]years old, tee A is a modern modification, built in 2010, and thus, according to plaintiff's experts, subject to modern safety standards for golf courses. Notably, the third and seventh holes, which play in opposite directions, do not run parallel as the majority suggests, but instead intersect at an acute angle in the vicinity of the seventh hole's green and the third hole's traditional tee box. Thus, although there is virtually no buffer between the seventh green and the third tee box, the buffer area between the two holes increases significantly as a player heads down the third fairway toward the green on that hole.
Plaintiff's experts opined that the way defendant designed tee A was extremely dangerous and reckless, unreasonably increasing the risk that players on the seventh hole would be struck by an errantly hit ball, as occurred here. The thrust of the experts' opinions was twofold: first, by placing the new tee where it did, behind both the traditional third hole tee box and the seventh green, defendant "affirmatively created a 'Zone of Danger' drastically greater than the original tee box locations" and, second, it created an extremely dangerous "blind" shot.
According to plaintiff's experts, because there was less buffer the farther back one played on the third hole, a shot hit from tee A had a "drastically greater" chance of going into the seventh fairway than did a shot from the traditional tee. They opined that this unreasonably increased the risk to players on the seventh hole and could not safely be done unless, at the same time it was built, defendant constructed a buffer, such as trees, a hedgerow or netting, to guard against errant tee shots.
Plaintiff's experts also opined that the location of tee A was such that a player teeing off from there would be hitting an extremely dangerous "blind" shot. Players teeing off from the traditional tee area on the third hole could see players approaching on the seventh fairway, and vice versa. Accordingly, players on the seventh fairway were able to see when a ball was hit errantly from that tee, and protect themselves, and players on the tee could see if they have hit a ball toward another player and shout a warning. Tee A, however, was built behind a storm shack and below the elevated seventh green, so that players on the seventh fairway and tee A could not see each other. Thus, players hitting from tee A were unable to see if their ball was heading toward another player, and players on the seventh fairway could not easily see that a ball had been hit in their direction, giving them little or no opportunity to protect against being struck by it.
According to plaintiff's experts, for these reasons tee A created an extremely dangerous situation and violated generally accepted standards in golf course operations. Defendant disputed many of plaintiff's assertions. However, on a motion for summary judgment dismissing the complaint the court must view the evidence in the light most favorable [*10]to the plaintiff (see Connolly v Willard Mtn., Inc., 143 AD3d 1148, 1150 [3d Dept 2016]). Doing so, plaintiff carried his burden to raise a question of fact as to whether the "configuration set up by defendant[ ] unreasonably increased the risk that plaintiff would be injured" (Waite v County of Clinton, N.Y., 215 AD3d 1043, 1046 [3d Dept 2023]), precluding summary judgment.
The majority goes astray when it decides that, even if defendant did unreasonably increase the risks inherent in the game of golf, plaintiff's claim is barred by the primary assumption of risk doctrine because plaintiff was aware of the increased risks discussed above. In so concluding, the majority changes the "or" in the rule of Grady to an "and," requiring plaintiff to establish both that defendant unreasonably enhanced the risks inherent in golf and that the increased risks were unknown to him. In Grady, the plaintiff was aware that one of the risks associated with participating in baseball practice was the possibility of getting hit by an errantly thrown ball. The Court of Appeals found, however, that the plaintiff had raised triable questions of fact as to whether a drill utilizing two balls simultaneously in the infield had "created a dangerous condition over and above the usual dangers that are inherent in baseball" (Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d at 99 [internal quotation marks and citation omitted]). Although the plaintiff was aware that two balls were being used, the Court of Appeals held that summary judgment should not have been granted to the defendant, concluding that "[e]rrant balls may be an inherent risk of playing baseball, but a jury should be permitted to determine whether plaintiff's injury was the result of such an inherent risk, or whether the risks were concealed or unreasonably enhanced by the complexity of the drill" (id. at 99-100 [internal quotation marks, brackets and citation omitted]). In other words, if the risks inherent in a sport are either concealed or unreasonably enhanced by the defendant, then the case is not barred by the primary assumption of risk doctrine. Similar to Grady, a question of fact has been presented here as to whether defendant unreasonably enhanced the risks inherent in the game of golf.
In light of that question of fact, Supreme Court properly denied defendant's motion for summary judgment. The majority's contrary conclusion inappropriately fuses the two exceptions of the primary assumption of risk doctrine into one, effectively immunizing golf course owners from all liability for golf-ball injuries, regardless of how unreasonably they have acted. Because the law does not require that result, the order of Supreme Court should be affirmed.
Aarons, J.P., concurs.
ORDERED that the order is reversed, on the law, without costs, defendant Cazenovia Golf Club, Inc.'s motion for summary judgment granted, and complaint dismissed.

Footnotes

Footnote 1: Plaintiff also asserted claims against Hubbard and his father, which were dismissed in prior orders.