DeMulder v Hunter Mtn. Ski Bowl, Inc. (2024 NY Slip Op 06097)

DeMulder v Hunter Mtn. Ski Bowl, Inc.

2024 NY Slip Op 06097

Decided on December 5, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:December 5, 2024

CV-23-1867
[*1]Thomas DeMulder et al., Appellants,
v
Hunter Mountain Ski Bowl, Inc., et al., Respondents.

Calendar Date:October 16, 2024

Before:Aarons, J.P., Reynolds Fitzgerald, McShan and Mackey, JJ.

The Steiner Law Firm, PLLC, Ossining (Norman Steiner of counsel), for appellants.
Zweig Law, PC, Hamburg (Steven M. Zweig of counsel), for respondents.

McShan, J.
Appeal from an order of the Supreme Court (Adam W. Silverman, J.), entered May 16, 2023 in Greene County, which, among other things, granted defendants' motion for summary judgment dismissing the complaint.
In March 2020, plaintiff Thomas DeMulder, a self-described "[s]trong intermediate" skier, injured himself while skiing at Hunter Mountain Ski Resort, located in the Town of Hunter, Greene County and owned and operated by defendants. While skiing down the Overlook trail, a black diamond trail, DeMulder fell on his side after hitting a soft patch of snow and slid down the mountain and off the edge of the trail, ultimately striking a tree and suffering multiple injuries. Thereafter, DeMulder and his spouse, derivatively, commenced this action alleging that DeMulder was injured due to the negligent design and construction of the ski area as well as the unsafe and hazardous condition in the trail itself and the trees alongside the trail. After issue was joined, defendants moved for summary judgment dismissing the complaint alleging that plaintiffs did not have an actionable claim for DeMulder's injuries under the doctrine of assumption of risk. Plaintiffs opposed the motion and submitted various exhibits, including three affidavits from proposed experts supporting the argument that defendants concealed the risk and therefore the assumption of risk doctrine should not apply to the facts of this case. Ultimately, Supreme Court granted defendants' motion in its entirety and dismissed the complaint, precipitating this appeal by plaintiffs.
We affirm. "A person who participates in downhill skiing assumes the usual risks inherent in that activity (i.e., those that are known, apparent or reasonably foreseeable)" (Clauss v Bush, 79 AD3d 1397, 1398 [3d Dept 2010]; accord Bishop v State of New York, 219 AD3d 994, 995 [3d Dept 2023]). In turn, "a ski area operator is relieved from liability for risks inherent in the sport of downhill skiing when the participant is aware of, appreciates and voluntarily assumes those risks," and a participant's awareness of such risk "must be assessed against the background of the skill and experience of the participant" (A.G. v Vail Resorts Mgt. Co., 226 AD3d 1249, 1250 [3d Dept 2024] [internal quotation marks and citations omitted]; see Schorpp v Oak Mtn., LLC, 143 AD3d 1136, 1137 [3d Dept 2016]). Although "knowledge plays a role[,] . . . inherency is the sine qua non" when considering whether a participant has assumed the risk of the activity in question (Morgan v State of New York, 90 NY2d 471, 484 [1997]; see Grady v Chenango Val. Cent. Sch. Dist., 40 NY3d 89, 95 [2023]). To that end, "[u]nder New York's Safety in Skiing Code, the Legislature has determined that downhill skiing contains inherent risks that may result in personal injury" (Bodden v Holiday Mtn. Fun Park Inc., 200 AD3d 1432, 1433 [3d Dept 2021] [citation omitted]), including personal injury caused by, among other things, "variations in terrain or weather conditions[*2]; surface or subsurface snow, ice, bare spots or areas of thin cover," as well as "forest growth, debris, branches, trees, roots, stumps or other natural objects" (General Obligations Law § 18-101; see Fabris v Town of Thompson, 192 AD2d 1045, 1046 [3d Dept 1993]).
We find that defendants met their initial burden on the motion. DeMulder's deposition testimony reflected his familiarity with the Overlook trail and his prior experience with the differing types of snow present on the date of the accident, as well as his observation of trees on the downhill edge of the trail and the absence of a barrier alongside the trail. DeMulder further noted that it was "not unusual" that a mountain has a drop-off over the trail as a natural variation in terrain and that he was aware, given the conditions, that he could slide down the trail and off the edge, and that doing so could result in a collision with a tree and potential injury. "Therefore, the burden shifted to plaintiffs to demonstrate facts from which it could be concluded that defendant[s] concealed or unreasonably enhanced the danger, or created conditions which were unique or above those inherent in the activity" (Dewan-Zemko v Hunter Mtn. Ski Bowl, Inc., 217 AD3d 1215, 1217 [3d Dept 2023] [internal quotation marks, brackets and citations omitted]).
In endeavoring to meet their burden, plaintiffs submitted, among other things, the affidavits of three separate experts to illustrate that defendants effectively concealed the risk of natural terrain beyond the trail's edge by placing fencing along other trails where a similar drop-off exists. Beginning with the affidavit of Isaac Zur, a sports psychologist, we find the assertions contained therein are conclusory. Zur stated that as an individual participating in a sport, DeMulder processed past observations of fencing on Hunter Mountain as data and consciously or subconsciously altered his skiing based on the presence or absence of a fence before him. However, the basis of Zur's assertion is entirely unsupported in light of the lack of any indication that DeMulder had altered his approach to the turn. To the contrary, DeMulder noted that he "s[aw the] trees ahead" and was "concentrating on where [his] next turn [would] be," had no issue approaching the turn and that he fell prior to attempting the turn, at which point he could not stop or slow down before ultimately colliding with the tree. DeMulder also noted that his fall was not unusual and would "happen[ ] to all . . . skiers," and that he assumed he would "have a controlled fall," slow himself down and resume skiing. In sum, we find that Zur's "conclusory affidavit . . . was insufficient to raise an issue of fact as to whether the defendants unreasonably increased the risks to which [DeMulder] was exposed" (Osorio v Deer Run Assoc. 1985, 231 AD2d 504, 504 [2d Dept 1996], lv denied 89 NY2d 808 [1997]).
Plaintiffs also rely on the expert affidavits of Joseph G. Thompson, a registered architect, and [*3]Richard Penniman, an expert in skiing safety, who espoused similar conclusions relative to the need for fencing in the location where DeMulder went off trail. Based on his personal observations of Hunter Mountain and the video submitted with the Penniman affidavit, Thompson stated that the fencing alongside various other trails on Hunter Mountain "exists to protect skiers from going off mountain at the trail's side edge." Specifically, Thompson posits that "[t]hese trail edge fences protect skiers from going off the edge of the trail edge and down a vertical embankment." Similarly, Penniman opined that the fencing throughout Hunter Mountain exists for skier safety and, in the event that is not the fencing's purpose, a skier would interpret the fencing as a safety measure given its placement. Penniman concluded that a skier, upon observing a lack of fencing, would interpret that there was no drop-off beyond the edge of the trail and, accordingly, modify his or her approach to navigating that part of the trail.[FN1]
Initially, we note that plaintiffs' focus on the lack of fencing preceding the particular embankment where he went off trail appears largely misplaced, as DeMulder fell well prior to such terrain and, ultimately, the embankment did not influence his fall or the ensuing collision with a tree. Consequently, the connection with the demarcation of such terrain by fencing on other trails and DeMulder's collision with a tree appears tenuous as plaintiffs do not assert that fencing was required for each tree line. In any event, the assertion that the danger was "concealed" is contrary to DeMulder's own testimony, which reflected that he "had no complaint about the turn going in there" and that he was aware of the tree line and the danger it posed (compare Dewan-Zemko v Hunter Mtn. Ski Bowl, Inc., 217 AD3d at 1218; Sharrow v New York State Olympic Regional Dev. Auth., 307 AD2d 605, 608 [3d Dept 2003]). Further, the existence of fencing in other areas of the mountain "does not 'conceal' [a danger that is otherwise obvious] and does not reasonably create the impression that the entire trail is otherwise free of such conditions, particularly for an experienced skier such as" plaintiff, who acknowledged that he could see the tree line in question and, in turn, understood the risks of colliding with a tree (Hyland v State of New York, 300 AD2d 794, 795 [3d Dept 2002], lv denied 100 NY2d 504 [2003]; compare Sharrow v New York State Olympic Regional Dev. Auth., 307 AD2d at 608).
Rather, distilled to its core, the premise of plaintiffs' complaint, as essentially posited by Penniman and Thompson, is the assertion that an additional safety feature — in this case, a fence — was necessary at the Overlook trail merge and would have prevented DeMulder's injuries.[FN2] Indeed, DeMulder insisted at his deposition that "there should be some sort of barrier that [kept him] from going off that embankment." That assertion, however, runs headlong, and must yield, to the applicable [*4]principles of assumption of risk. As we have consistently noted, and "[a]s is at least implicit in plaintiff[s'] argument, if only the risks of ordinary and necessary dangers inherent in a sport are deemed assumed, the doctrine of no duty/assumption of risk . . . would not apply to obvious, known conditions so long as a defendant could feasibly have provided safer conditions" (Verro v New York Racing Assn., 142 AD2d 396, 400 [3d Dept 1989], lv denied 74 NY2d 611 [1989]; see Martin v State of New York, 64 AD3d 62, 64 [3d Dept 2009], lv denied 13 NY3d 706 [2009]; see also Sontag v Holiday Val., Inc., 38 AD3d 1350, 1351 [4th Dept 2007]). As pertinent in this case, it is a well-established principle of law that "contact with visible solid objects on the perimeter of the ski trail, whether a fence, tree or chair-lift support, the very presence of which at a trail's edge serves as a warning, is among the known assumed risks of skiing" (Fabris v Town of Thompson, 192 AD2d at 1046). With those principles in mind, our review of the record firmly establishes that DeMulder, "as a voluntary participant in the sport of skiing, assumed the very risks that he encountered before his . . . accident" (Bono v Hunter Mtn. Ski Bowl, Inc., 269 AD2d 482, 482-483 [2d Dept 2000], lv denied 95 NY2d 754 [2000]; see Schorpp v Oak Mtn., LLC, 143 AD3d at 1137) as he was aware of the obvious, and statutorily recognized, danger of colliding with a tree in an area where a fence was not present (see General Obligations Law § 18-101; Hyland v State of New York, 300 AD2d at 795; Atwell v State of New York, 229 AD2d 849, 850 [3d Dept 1996]; see also Bukowski v Clarkson Univ., 19 NY3d 353, 357 [2012]; Katleski v Cazenovia Golf Club, Inc., 225 AD3d 1030, 1038 [3d Dept 2024]). Accordingly, we agree with Supreme Court's determination that plaintiffs failed to raise a triable issue of fact regarding whether DeMulder assumed the risk of colliding with a tree (see Hyland v State of New York, 300 AD2d at 796; Braun v Davos Resort, 241 AD2d 533, 534 [2d Dept 1997]; see also Bennett v Kissing Bridge Corp., 17 AD3d 990, 991 [4th Dept 2005], affd 5 NY3d 812 [2005]).
Aarons, J.P., Reynolds Fitzgerald and Mackey, JJ., concur.
ORDERED that the order is affirmed, with costs.

Footnotes

Footnote 1: Penniman also opined that the Overlook trail should have been closed in light of the surface conditions existing at the time of the accident. However, on this appeal, plaintiffs do not specifically assert that premise as part of their contention that they raised triable issues of fact in opposition to defendants' motion. In any event, we discern no issue of fact raised in the record that would exclude such claim from the assumed risk posed by the conditions on the Overlook trail (see Jordan v Maple Ski Ridge, Inc., 229 AD2d 756, 757 [3d Dept 1996]; see also Bishop v State of New York, 219 AD3d at 997; Covel v Mt. Mansfield Co., 237 AD2d 791, 792-793 [3d Dept 1997]).

Footnote 2: We note that Penniman does not cite to any established industry standard requiring fencing to protect skiers from an embankment or tree line (see Bukowski v Clarkson Univ., 19 NY3d 353, 357 [2012]). To the contrary, Penniman's assertion, in sum and substance, is that defendants' use of fencing in other locations created a further duty to fence off all areas that presented similar dangers.